OPINION
{¶ 1} Leon Miller appeals from his conviction of two counts of carrying a concealed weapon after a jury trial.
 {¶ 2} The facts developed at trial are set out in Miller's brief and are supported by our review of the record.
 {¶ 3} In the early morning hours of August 25, 2001 Trotwood police officers responded to a call concerning a disturbance at a bingo hall with guns possibly being involved. Upon arrival at the hall, Officer Richard Stone approached a blue 2-door Yukon SUV which was parked in the hall parking lot. Stone observed Leon Miller lying on the rear seat of the vehicle. Miller was lying on his left side with his back towards the front of the vehicle. There were indications that he was asleep, in what was called the fetal position. Helen Miller told police later that her son Leon was using her truck that evening (even though she was not home when he left with the vehicle).
 {¶ 4} Miller was awakened by Officer Stone who tapped on the SUV's window and said: "hey wake up", "hey can you hear me". Miller got up and immediately exited the SUV through the passenger side where he was met by Officer Greg Saylor. Miller was not seen in the front seat of the vehicle. Once out of the vehicle, Mr. Miller was immediately searched by Officer Saylor and then placed in a police cruiser. Officer Saylor indicated that in Mr. Miller's back jeans pocket he found a baggie containing marijuana. No keys to the vehicle were found in Mr. Miller's possession. He was placed under arrest for the marijuana and for a charge of drug paraphernalia.
 {¶ 5} Officer Swanson of the Trotwood Police Department observed Mr. Miller exit the SUV from the passenger side and after Mr. Miller was secured by Officer Saylor, he returned to the SUV to search the car prior to having it towed. Swanson first went to the passenger side and shined his light in the interior and saw some marijuana seeds in the front passenger area. Swanson then went to the back of the vehicle where Miller was sleeping, and underneath the bench seat found a zip lock bag of marijuana with smaller bags enclosed. Where the passenger seat pushes forward to let back passengers out, Swanson found a single baggie, somewhat under the front seat.
 {¶ 6} Swanson then went to the front passenger side of the vehicle and saw a piece of plastic sticking out of the floorboard way up by the firewall, an area of the carpet where it goes up and under towards the front under the dashboard area. The officer rolled back the carpet and observed a large baggie of marijuana and two guns. He indicated that the foam padding had been cut away to make an area to place the items. Swanson said that when he first went to search the front passenger compartment he could not see any bulges in the carpet or tell that there was anything there. He testified that this area up under the dash, under the carpet was at least four feet from the back of the SUV. (Tr. 183). Officer Swanson recovered a Smith and Wesson revolver as well as a .9 mm handgun. (Tr. 179). Both guns as well as the baggies of marijuana were tested for prints and no usable prints were found.
 {¶ 7} The defendant's mother, Helen Miller, testified for the State. She testified she owned the Yukon SUV but was not the primary driver of it. She said the defendant drove the vehicle on the night he was arrested. She testified the guns and drugs did not belong to her. She admitted she told the prosecutor on a prior occasion that the defendant was the primary driver of her vehicle but she testified she was "misinformed" when she made that statement. (Tr. 194).
 {¶ 8} On cross-examination, she said other people sometimes drove her Yukon. She said her four sisters and two nephews and her brother have driven her Yukon.
 {¶ 9} In his first assignment, Miller argues the trial court erred by denying his Crim.R. 29 motion made at the conclusion of the evidence. Miller argues the State presented no evidence that he knew the guns were in his mother's car and there was no evidence that the guns were "ready at hand" Miller notes that he was asleep in the rear seat, and was not in possession of the car's keys. He also notes there was no evidence presented about the ownership of the guns recovered. He also notes that other members of his family drove his mother's car and his fingerprints were not found on the guns.
 {¶ 10} For its part, the State argues that evidence established that Miller was the primary driver of the SUV and that "drugs and guns go hand in hand" as Officer Saylor testified. (Tr. 92, 109). The State also notes that the marijuana recovered appeared to be packaged for distribution. The State notes that when the guns were discovered, the foam in the floorboard had been carved out, in the shape of a square, which provided a place for the guns and drugs to be easily hidden from ordinary observation. Officers Stone and Saylor also testified that they observed what appeared to be bullet holes in both the front and rear bumpers of the vehicle. The State also argues that Helen Miller, the defendant's mother, denied ownership of the drugs and guns and admitted that the defendant was the primary driver on the night he was arrested. (Tr. 195).
 {¶ 11} R.C. 2923.12(A) provides that "no person shall knowingly carry or have, concealed on his or her person or concealed ready at hand
any deadly weapon or dangerous ordnance."
 {¶ 12} A person acts "knowingly" when he is aware that his conduct will probably cause a certain result, or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. The State argues that the evidence demonstrated that Miller knew that the guns were in the vehicle hidden from public view.
 {¶ 13} The defendant's mother denied knowledge of the guns and drugs. The jury was free to believe her testimony. The jury apparently believed that the defendant really was the primary driver of his mother's vehicle not only on the night of his arrest but on other occasions. The jury apparently believed it unlikely that occasional users of Mrs. Miller's truck like her sisters, her brother, and her nephews would have cut up the carpet of her vehicle to secrete guns in it. The jury was also aware that the defendant was found in possession of a baggie of marijuana and that a large baggie was found under the carpet next to the guns. In short, the jury could have reasonably concluded from the evidence presented and the reasonable inferences flowing from that evidence that Miller knew of the presence of the guns.
 {¶ 14} The Committee Comment to HB 511 notes that this section prohibits having or carrying any deadly weapon or dangerous ordnance, either concealed on one's person, or concealed where it may readily be picked up or used. "Ready at hand" means so near as to be conveniently accessible and within immediate physical reach. See Porello v. State
(1929), 121 Ohio St. 280.
 {¶ 15} In State v. Thornton (May 4, 2001) Mont. App. 18545, we held that the "ready at hand" requirement was satisfied where the defendant was the driver of a vehicle where a gun was recovered on the floor board in front of the front passenger seat.
 {¶ 16} After careful consideration we find the State's argument to be more persuasive. The jury could fairly have concluded from the evidence that the hidden guns were conveniently accessible to Miller and within his immediate reach had he merely pushed the front seat down and reached under the dashboard for the weapons. Miller could have also exited the vehicle and reached for the guns that were recovered. The guns were not in a locked glove compartment nor were they in a locked trunk. A rational juror could have concluded from the evidence presented that the State had proven beyond a reasonable doubt that Miller was guilty of carrying the concealed weapons as charged in the indictment. The first assignment is overruled.
 {¶ 17} In his second assignment, Miller contends that his convictions were against the manifest weight of the evidence. There is no evidence the jury lost its way in assessing the evidence and we independently conclude the convictions were not against the manifest weight of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380. The second assignment of error is overruled.
 {¶ 18} Miller in his third assignment contends that R.C. 2923.12 is unconstitutional. Recently, the Ohio Supreme Court rejected this contention in Klein v. Leis (2003), 99 Ohio St.3d 537. The third assignment is overruled.
 {¶ 19} The judgment of the trial court is Affirmed.
WOLFF, J., and YOUNG, J., concur.