The STATE of Ohio, Appellee,

v.

ROBINSON, Appellant.

[Cite as *State v. Robinson*, 187 Ohio App.3d 253, 2010-Ohio-543.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–081084, C–081141.

Decided Feb. 19, 2010.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Bernadette M. Longano, for appellant.

---

CUNNINGHAM, Judge.

{¶ 1} Defendant-appellant, Antonio Robinson, appeals from the trial court's judgment convicting him of having weapons while under a disability and carrying concealed weapons. Robinson contends that these convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For the reasons that follow, we affirm Robinson's conviction for having weapons under a disability, but we reverse his conviction for carrying concealed weapons.

## Background Facts

{¶ 2} In 2006, Robinson was employed as a private security guard for DECO Security Services, providing security for a federal government building in Cincinnati. Robinson was licensed by the Ohio Department of Public Safety, Division of Homeland Security, to carry an unconcealed firearm as a security guard. To obtain the license, Robinson had to meet certain requirements, including passing a BCI and FBI background check. DECO had issued Robinson a firearm, namely a 9 mm semiautomatic Glock pistol.

{¶ 3} Robinson agreed to meet Logan Mathews after work on January 28, 2006. According to the state, Robinson had intended to sell marijuana to Mathews. According to Robinson, he had intended to sell Mathews a television that was located on the back seat of his Cadillac.

{¶ 4} The meeting between Robinson and Mathews occurred in Robinson's Cadillac. Shortly thereafter, Mathews shot Robinson three times with a revolver.

Robinson grabbed a .40–caliber semiautomatic pistol and shot Mathews in the chest, killing him. Robinson then called his mother on his cellular phone while driving to her house nearby. Robinson's phone call to his mother occurred less than four minutes after Mathews's last cellular phone call to Robinson before the meeting.

{¶ 5} When Robinson arrived at his mother's house, she transported him to the hospital in her vehicle. Robinson's brother called 9–1–1 from his mother's house. The police responded to the house and found Mathews dead in the front passenger seat of the Cadillac. Underneath Mathews's slumped body, they recovered a $20 bill and a plastic bag containing a small amount of marijuana, both covered with blood.

{¶ 6} The police recovered several weapons in the Cadillac. On the floor of the driver's seat, they recovered the revolver Mathews had used to shoot Robinson, the pistol that Robinson had used to shoot Mathews, and a knife. They found an additional revolver in Mathews's zippered coat pocket. In the trunk, they located the pistol issued to Robinson by his employer. A detective's photograph of the Cadillac showed that the trunk access on the rear-seat center armrest was open.

{¶ 7} In the case numbered B–0601814, Robinson was indicted on one count of murder[1] and one count of improperly handling firearms in a motor vehicle.[2] Later, in the case numbered B–0704756, Robinson was indicted on one count of tampering with evidence,[3] one count of having weapons while under a disability,[4] and one count of carrying concealed weapons.[5]

{¶ 8} Robinson unsuccessfully moved to dismiss several of the charges. At a trial to the bench, Robinson claimed self-defense and admitted that he did not have an R.C. 2923.125 license to carry a concealed weapon. The trial court acquitted Robinson of murder and tampering with evidence but found him guilty of the three other offenses. After determining that the offense of improperly handling firearms in a motor vehicle and the offense of carrying concealed weapons were allied offenses of similar import, the court merged those offenses for sentencing. The court sentenced Robinson to 12 months' incarceration for the offense of carrying concealed weapons and to one year of incarceration for the

1. R.C. 2903.02(A).

2. R.C. 2923.16(B).

3. R.C. 2921.12(A)(1).

4. R.C. 2923.13(A)(3).

5. R.C. 2923.12(A)(3).

offense of having weapons under a disability, with the sentences to run concurrently.

## Carrying Concealed Weapons

■ {¶ 9} We first address Robinson's conviction for carrying concealed weapons. Robinson was indicted and convicted under R.C. 2923.12(A)(3), which provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * dangerous ordnance." The indictment also contained a penalty-enhancement specification indicating that "the weapon involved [was] a firearm that [was] either loaded or with ammunition ready at hand."

{¶ 10} In challenging this conviction, Robinson argues that the state failed to establish the "ready at hand" element. To support this argument, Robinson relies on his own testimony at trial that both of his loaded pistols had been in the locked trunk of his Cadillac before the shooting.

■ {¶ 11} We find Robinson's argument meritless. " 'Ready at hand' means so near as to be conveniently accessible and within immediate physical reach." [6] The state presented evidence that one of Robinson's loaded firearms was kept under the driver's seat and was thus ready at hand. Specifically, Cincinnati Police Officer Bill Hilbert testified that Robinson had stated in an interview at the hospital that he had pulled the weapon he had used to defend himself from under the driver's seat. At trial, Robinson denied making this statement to Hilbert and challenged his competency at the time of the statement. But the evidence is in the record. When we view this statement along with the other evidence in the light most favorable to the state, we hold that the state sufficiently established the "ready at hand" element of the offense.[7]

{¶ 12} Further, even if we lend no weight to Hilbert's testimony and accept as true Robinson's testimony that both of his pistols were in the trunk, Robinson's argument is still unavailing. Robinson admitted that neither loaded pistol was in a locked box and that he was able to obtain access to at least one pistol easily and quickly through the rear-seat trunk access. Thus, at least this pistol "was so near as to be conveniently accessible and within immediate physical reach" and, therefore, "ready at hand."

■ {¶ 13} Although we hold that the state established the "ready at hand" element of the offense, we reverse Robinson's conviction for carrying concealed

---

6. *State v. Miller*, 2nd Dist. No. 19589, 2003-Ohio-6239, 2003 WL 22764120, at ¶ 14.

7. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

weapons because the state indicted Robinson under the wrong subsection of the statute. Instead of charging him under the (A)(2) subsection of R.C. 2923.12, which applies to handguns other than dangerous ordnance, the state charged him with violating subsection (A)(3), which applies to dangerous ordnance.

{¶ 14} "Dangerous ordnance" is defined in R.C. 2923.11(K) and includes a weapon such as a sawed-off firearm, a zipgun, an explosive or incendiary device, a weapon designed and manufactured for military purposes, a ballistic knife, and an automatic firearm. "Automatic firearm" includes a firearm designed or specially adapted to fire a succession of cartridges with a single function of the trigger, as well as some "semi-automatic firearm[s] designed or specially adapted to fire more than thirty-one cartridges without reloading." [8]

{¶ 15} In this case, the firearms examiner in a stipulated report identified the weapon that Robinson had used to defend himself as a "semiautomatic pistol, 10 + 1 shot, 40 S & W chambered, Glock model 22," and the other weapon as a "semiautomatic, 10 + 1 shot, 9mm Lugar chambered, Glock model 17." Because the evidence was not sufficient to establish the "dangerous ordnance" element of the offense, we must reverse Robinson's conviction for carrying concealed weapons.

### Having Weapons Under a Disability

■ {¶ 16} Robinson also assigns as error the trial court's entry of a conviction for the offense of having weapons under a disability. Robinson was charged with violating R.C. 2923.13(A)(3), which provides, "Unless relieved from disability * * * no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * the person is under indictment for or has been convicted of any offense involving the illegal possession * * * [of] any drug of abuse."

{¶ 17} To establish the disability element of the offense in this case, the state presented Robinson's prior convictions for possession of marijuana in violation of R.C. 2925.11. These convictions involved minor-misdemeanor offenses.

{¶ 18} Robinson contends that these prior convictions were not a disability because R.C. 2925.11(D) provides that an arrest or conviction for a minor-misdemeanor violation of the drug-possession statute does not constitute a "criminal record." [9] Moreover, he contends that assigning a disability by virtue

---

8. R.C. 2923.11(E).

9. R.C. 2925.11(D). The section reads, "[A]rrest or conviction for a minor misdemeanor violation of this section does not constitute a criminal record and need not be reported by the person so arrested or convicted in response to any inquires about the person's criminal

of his prior convictions for minor-misdemeanor offenses created an absurd result because the state had actually licensed him to carry a firearm as a security guard.

{¶ 19} After careful consideration, we reject Robinson's argument. In interpreting or construing a statute, our primary concern is the legislature's intent in enacting it.[10] To discern this intent, we must "read words and phrases in context according to the rules of grammar and common usage,"[11] mindful that criminal statutes must be strictly construed against the state.[12]

{¶ 20} R.C. 2923.13(A)(3) "broadly"[13] provides that a disability arises when one is indicted for or convicted of "any offense involving the illegal possession, [or] use * * * [of] any drug of abuse." The Ohio Supreme Court has held that the drug-abuse offenses referred to in R.C. 2923.13(A)(3) are defined in R.C. 2925.01(G)(1) through (4), formerly R.C. 2925.01(H)(1) through (4).[14] Subsection (G)(1) of R.C. 2925.01 expressly includes a violation of R.C. 2925.11, the possession statute. "Offense," as used in Ohio's criminal code, includes conduct classified as a minor misdemeanor,[15] and "any" is a common, inclusive term. Thus, under the clear, unambiguous language of the disability statute, a conviction for a minor-misdemeanor violation of R.C. 2925.11 creates a disability precluding the possession of a firearm. This court interpreted the statute accordingly in *State v. Mackin*,[16] but in *Mackin* we did not consider the argument that Robinson presents based on R.C. 2925.11(D).

{¶ 21} Robinson essentially argues that our interpretation of R.C. 2923.13(A)(3) is inconsistent with the language of R.C. 2925.11(D). But we do not find the statutes inconsistent when read together. The criminal-record exception of R.C. 2923.11(D) has a specified application that includes employment opportunities and that, by its terms, is distinct from the weapons proscription found in the disability statute.

---

record, including any inquiries contained in any application for employment, license, or other right or privilege, or made in connection with the person's appearance as a witness."

10. *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, at ¶ 23.

11. Id., citing R.C. 1.42.

12. R.C. 2901.04(A).

13. *State v. Moaning* (1996), 76 Ohio St.3d 126, 128, 666 N.E.2d 1115.

14. Id. at 128–129, 666 N.E.2d 1115.

15. R.C. 2901.02(A) and 2935.01(D).

16. *State v. Macklin* (Dec. 26, 1979), 1st Dist. No. C–790054, 1979 WL 208818; see also *State v. Morris*, 11th Dist. No. 2008–T–0110, 2009-Ohio-6033, 2009 WL 3807159.

{¶ 22} In addition, the legislature has excepted a conviction for a minor-misdemeanor offense, in some circumstances, from the definition of a "previous or subsequent conviction" for the limited purpose of determining first-offender status under the expungement statute.[17]  If the legislature had intended to except convictions for minor-misdemeanor offenses from the disability statute, it could have easily done so.  Rather, the legislature intended the disability statute to provide a broad " 'prohibition against weapons in the hands of bad risks.' "[18]  Instead of excepting minor-misdemeanor drug offenses, the legislature provided a mechanism for the removal of the disability in R.C. 2923.14, if warranted.

{¶ 23} We hold that a conviction for a minor-misdemeanor violation of R.C. 2925.11 creates a disability prohibiting the possession of a firearm or dangerous ordnance, even though the conviction may not constitute a "criminal record" for background checks involved in licensing.  Thus, we reject Robinson's interpretation of the disability statute and his challenge to his conviction based upon his erroneous interpretation.

{¶ 24} As to Robinson's challenge to his conviction on the ground that he did not know that his prior convictions created a disability, Robinson's convictions, which he was fully aware of, put him on notice that certain disabilities attached as a matter of law.[19]  "Everyone is presumed to know the law; ignorance of its dictates is not a ground for relief from its application."[20]  And in light of the mandatory language of the disability statute, it is no defense that Robinson had a license to carry a firearm as a security guard.

{¶ 25} Ultimately, we conclude that Robinson's conviction for having weapons under a disability was supported by the evidence and was not against the manifest weight of the evidence.[21]

### Improper Handling of Firearms in a Motor Vehicle

{¶ 26} Finally, Robinson argues that the trial court erred by convicting him of the offense of improperly handling firearms in a motor vehicle, as charged in

---

17.  R.C. 2953.31(A).

18.  *Moaning,* 76 Ohio St.3d at 128, 666 N.E.2d 1115, quoting the Legislative Service Commission's Comment to R.C. 2923.13, as enacted by 1972 Am.Sub.H.B. No. 511.

19.  See *State v. Jones,* 8th Dist. No. 90903, 2009-Ohio-3371, 2009 WL 1965449, at ¶ 5–6.

20.  *In re Adoption of Kuhlmann* (1994), 99 Ohio App.3d 44, 50, 649 N.E.2d 1279, citing *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 30, 548 N.E.2d 933.  See also *State v. Pinkney* (1988), 36 Ohio St.3d 190, 198, 522 N.E.2d 555.

21.  See *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492;  see also *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

count two of the indictment in the case numbered B–0601814. He claims to appeal this "conviction" in the appeal numbered C–081084.

■■ {¶ 27} A conviction does not exist without a sentence.[22] Although the trial court found Robinson guilty of this offense, the court did not sentence Robinson for this offense. Thus, Robinson has not been convicted of the offense, and we do not have a conviction to review. Because there is no assignment of error for us to review in the appeal numbered C–081084, we dismiss that appeal.

## Conclusion

{¶ 28} Accordingly, in the appeal numbered C–081141, we sustain the first assignment of error in part, reverse Robinson's conviction for carrying concealed weapons, and discharge him from further prosecution for the offense under the indictment numbered B–0704756. We overrule Robinson's assignments of error challenging his conviction for having weapons under a disability, and we affirm that conviction.

Judgment accordingly.

Hendon, P.J., and Sundermann, J., concur.

---

22. *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, syllabus.