[Cite as *State v. Carmen*, 2013-Ohio-3325.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120692 |
| | | TRIAL NO.  B-1200408 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| CHARLES CARMEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 31, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Phil Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela Stagnaro*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Following a bench trial, defendant-appellant Charles Carmen was found guilty of one count of attempted murder, two counts of felonious assault, one count of having a weapon under a disability, and the accompanying firearm specifications in connection with his shooting of Alvin Sanders.  At sentencing, the trial court merged the felonious assaults with the attempted murder.  It also merged the firearm specifications.  The trial court sentenced Carmen to eight years for the attempted murder, to 36 months for the weapons-under-disability offense, and to three years on the merged firearm specifications.  The trial court ordered the terms be served consecutively for a total sentence of 14 years in prison.

{¶2}   In two assignments of error, Carmen claims (1) that his convictions are not supported by the sufficiency and the weight of the evidence, and (2) that his sentence is contrary to law because the trial court failed to consider the purposes and principles of sentencing and the factors in R.C. 2929.12 and failed to make the findings to impose consecutive prison terms.  Finding merit in neither assignment of error, we affirm the trial court's judgment and sentences.

{¶3}   On the afternoon of January 16, 2011, Alvin Sanders was sitting in his car when he saw Carmen across the street.  Sanders testified that he was angry with Carmen because Carmen owed him money and Sanders had been unable to "catch up" with him.  Sanders got out of his car, crossed the street, and confronted Carmen, asking him for the money.   When Carmen refused to pay him, Sanders began cussing at Carmen and threatening to "kick his ass."   Carmen pulled a gun from his coat and told Sanders that he was "going to die today."   He shot Sanders at close range multiple times in the face and body.  Sanders fell to the ground after the first or second shot, but Carmen continued shooting.  Carmen then ran off.

{¶4}  Sanders's girlfriend, Tamara Taylor, and James Marion, an uninterested bystander, both witnessed the shooting.  Marion called the police.  When they arrived, they found Sanders lying unconscious on the sidewalk.   Because Sanders had sustained life-threatening injuries, he was immediately transported to the hospital.   Sanders testified that he had suffered gunshot wounds to multiple parts of his body, and that he had remained in the hospital for months, undergoing several surgeries.  He stated that he was using a wheelchair while he learned to walk again, but that he would never completely recover from his injuries.

{¶5}  At the scene of the shooting, the police collected evidence.   They recovered three .25-caliber casings on the sidewalk.  They interviewed Taylor and Marion, and they obtained still photographs of a man taken just before and after the shooting by a surveillance camera at a nearby convenience store.  After identifying Carmen as the man in the photos, the police gave the photos to the local news media in hopes of learning Carmen's whereabouts.

{¶6}  The following day, Carmen turned himself in to the police. He was arrested, advised of his *Miranda* rights, and interviewed by the police.   Carmen's interview was recorded and played during the trial.   Carmen told police that Sanders had confronted him two times.  He had tried to walk away, but Sanders had continued to pursue him.  Carmen told police that he had dated Sanders's sister, but that he did not know why Sanders had confronted him.  Carmen told police that Sanders often carried a gun, and that Sanders had kept his hands in his pockets during their altercation.   He said that he had shot Sanders with a semi-automatic pistol because he was afraid that Sanders was going to shoot him.

{¶7}  Sanders, Taylor, and Marion testified at trial.   Taylor and Marion corroborated Sanders's testimony.  They testified that Sanders had initiated the incident

by running across the street to confront Carmen, and that Sanders had yelled and threatened to harm Carmen, but that he had never actually raised his hand to strike Carmen or pulled a weapon on Carmen. Carmen had then stepped forward, pulled a gun from his pocket, and shot Sanders multiple times. Carmen made no attempt to walk away from Sanders before firing. Carmen did not testify at trial, but relied on his earlier statement to police that he had shot Sanders in self-defense.

{¶8} In his first assignment of error, Carmen argues that his convictions for attempted murder and felonious assault were supported by insufficient evidence and were contrary to the manifest weight of the evidence.

{¶9} While the trial court found Carmen guilty of attempted murder and two counts of felonious assault, it merged the felonious assaults with the attempted murder and sentenced Carmen only on the attempted-murder offense. Thus, Carmen was never convicted of the felonious assaults. *See State v. Robinson*, 187 Ohio App.3d 253, 2010-Ohio-543, 931 N.E.2d 1110, ¶ 26–27 (1st Dist.) As a result, we confine our analysis to the attempted-murder conviction.

{¶10} In reviewing a challenge to the sufficiency of the evidence, this court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In addressing a manifest-weight-of-the-evidence challenge, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387.

4

{¶11} To convict Carmen of attempted murder, the state had to prove that he had purposely engaged in conduct, which if successful, would have constituted or resulted in murder. *See* R.C. 2923.02(A) and 2903.02(A).

{¶12} The state presented sufficient evidence to support Carmen's conviction for attempted murder. Multiple witnesses, including Sanders, testified that following a verbal altercation between Sanders and Carmen, Carmen had pulled out a weapon and shot Sanders, who was unarmed, at close range multiple times in the face and body. Although Carmen argues that the state failed to prove that he had purposely attempted to cause Sanders's death, the trial court could have inferred that Carmen had acted purposely, given Carmen's statement to Sanders prior to the shooting that Sanders was "going to die today," Carmen's repeated shooting of Sanders even after Sanders had fallen to the ground, and the nature and extent of the wounds Sanders had suffered.

{¶13} Carmen also argues that the trial court lost its way in finding him guilty of the attempted murder of Sanders. He claims that he was acting in self-defense when he shot Sanders.

{¶14} Under Ohio law, "self-defense is an affirmative defense that legally excuses admitted criminal conduct." *State v. Edwards*, 1st Dist. Hamilton No. C-110773, 2013-Ohio-239, ¶ 5, citing *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973). To establish self-defense, Carmen had to prove by a preponderance of the evidence (1) that he was not at fault in creating the situation giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm, and that his only means of escape from such danger was in the use of such force, and (3) that he did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 79-80, 388 N.E.2d 755 (1979); *see* R.C.

2901.05(A). The elements of the defense are cumulative. Thus, Carmen's failure to prove any one of the three elements by a preponderance of the evidence would negate the defense. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 73; *see Edwards* at ¶ 9.

{¶15} The trial court concluded that Carmen had failed to prove the second element of the defense—that he had acted upon a bona fide belief that he was in imminent danger of death or great bodily harm—and that Carmen had used excessive force in pulling out a gun to shoot Sanders, who had been unarmed and incapable of inflicting death or great bodily harm upon Carmen. *See In re Maupin*, 1st Dist. Hamilton No. C-980094, 1998 Ohio App. LEXIS 5907, *5-6 (Dec. 11, 1998).

{¶16} Based upon our review of the record, we cannot say that the trial court lost its way in concluding that Carmen had failed to carry his burden to establish that he had acted in self-defense. *Edwards* at ¶ 10. The trial evidence established that Sanders had approached Carmen, cussing at him and threatening to "kick his ass," but that he had never actually raised his hand to hit Carmen. Carmen then responded by shooting Sanders multiple times in the face and body.

{¶17} Although Carmen argues that Sanders had a prior criminal history, which included a conviction for possession of an AK-47, and that he feared Sanders would pull out a weapon and shoot him, there is no evidence that Sanders had a gun the day Carmen shot him. And multiple witnesses testified, despite Carmen's claims to the contrary, that Carmen could have retreated from Sanders had he chosen to do so. Accordingly, we conclude that Carmen's attempted-murder conviction was not contrary to the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *see also State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893

(1986); *State v. McLeod*, 82 Ohio App. 155, 157, 80 N.E.2d 699 (9th Dist.1948). We, therefore, overrule his first assignment of error.

{¶18} In his second assignment of error, Carmen argues that his 14-year prison sentence was contrary to law because (1) the trial court failed to consider the purposes and principles of sentencing in R.C. 2929.11 and the factors set forth in R.C. 2929.12 and (2) it failed to make the appropriate findings to impose consecutive sentences as set forth in R.C. 2929.14(C).

{¶19} Although we may presume that the trial court considered the factors under R.C. 2929.11 and R.C. 2929.12, here the trial court, prior to imposing Carmen's sentence, orally stated the applicable R.C. 2929.12 seriousness and recidivism factors. *See State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 24. The trial court stated that Carmen was 23-years-old, had four delinquency adjudications, had two felony and four misdemeanor convictions as an adult, had failed to successfully complete felony probation, and had served a prior prison term. The trial court further stated that Carmen had been released from prison on July 1, 2008, and was considered a high risk to reoffend. The trial court acknowledged that Sanders had been the aggressor and had started the incident, but stated that Sanders had been shot several times and had been seriously injured.

{¶20} The trial court additionally journalized a sentencing-findings worksheet which contained findings under R.C. 2929.12 as well as the necessary findings to impose consecutive sentences under R.C. 2929.14(C)(4). The trial court found that consecutive terms were necessary to protect the public and to punish Carmen and were not disproportionate to the seriousness of Carmen's conduct and the danger he posed to the public. The trial court further found that the harm caused

by the offenses was so great or unusual that no single term would adequately reflect the seriousness of Carmen's conduct, and that his criminal history showed a need to protect the public. *See* R.C. 2929.14(C)(4)(b) and (c).

{¶21} The record reflects that the trial court expressly considered the seriousness and recidivism factors in R.C. 2929.12 and made the necessary findings for imposing consecutive sentences on the journalized sentencing-findings worksheet. The record, furthermore, supports the court's findings. Therefore, we overrule Carmen's second assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry this date.