[Cite as *State v. Castle*, 2016-Ohio-4974.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2016-CA-16 |
| | : | |
| v. | : | T.C. NO. 15CR596 |
| | : | |
| KENNETH CASTLE | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___15th___ day of ____July_____, 2016.

. . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

ARGERI A. LAGOS, Atty. Reg. No. 0086403, 1 S. Limestone Street, Suite 1000, Springfield, Ohio 45502
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} In the Clark County Court of Common Pleas, Kenneth Castle was found guilty on his guilty plea of one count of trafficking in marijuana, a felony of the fourth degree. Other counts and specifications were dismissed pursuant to a plea agreement. The trial court sentenced Castle to prison for 18 months. On appeal, Castle challenges several aspects of his sentence. For the following reasons, the judgment of the trial court

will be affirmed.

## I. Facts and Procedural History

{¶ 2} According to the police reports, on July 1, 2015, a confidential informant placed a call to Castle asking to purchase half a pound of marijuana for $1,800. Castle stated that he was leaving for a doctor's appointment, but that he would have a "friend" make the delivery to the informant. Castle and the informant arranged for Castle's friend to meet the informant in the parking lot of a bar. Police officers observed Castle's house, the meeting spot, and the informant throughout the transaction.

{¶ 3} On July 14, 2015, police officers again worked with the confidential informant to contact Castle about an additional marijuana purchase. During the telephone conversation, Castle stated that he had higher grade marijuana at that time, did not have any of the lesser quality (which the informant had apparently bought previously), but would have some of the lesser-quality marijuana in about a week. Based on this information, the Sheriff's Office and drug task force obtained a search warrant for Castle's house.

{¶ 4} The search warrant was executed on July 15, 2015; Castle and his girlfriend were home at the time. The deputies found loaded firearms and drug paraphernalia. They also observed a locked safe in the basement. Castle provided the combination for the safe and told the deputies that it contained "a little weed" (i.e., "a couple of pounds" of marijuana). When the deputies opened the safe, they found "a large amount of U.S. Currency, firearms, pills, and a large amount of Marijuana."

{¶ 5} Castle initially agreed to work as a confidential informant on the "Biker Gang" from which he bought his marijuana. He provided some names and addresses

about the gang; he also stated that the biker gang had been "tr[ying] to get him to also sell Heroin and Meth," but he had refused to do so. After conversations over the next few days and negotiations about an agreement with the prosecutor, Castle refused to cooperate further by making drug buys from the biker gang, saying that "he would rather do his time in prison."

**{¶ 6}** On November 16, 2015, Castle was indicted on two counts of trafficking in marijuana (223.51 grams and 2,041.3 grams, an F4 and F3 respectively), possession of marijuana (2,041.3 grams, an F3), and aggravated trafficking in drugs and aggravated possession of drugs (related to pills containing various amounts of oxycodone, each an F3).[1] Each of Counts Two through Five had a firearm specification, and the indictment also included a forfeiture specification on each count, listing ten items (currency and weapons).

**{¶ 7}** On January 27, 2016, Castle pled guilty to one count of trafficking in marijuana (the count having to do with the July 1 transaction, which did not have a firearm specification), a fourth degree felony, and agreed to forfeit the items listed in the forfeiture specification, in exchange for which the other counts and specifications were dismissed; the State also agreed to remain silent on sentencing. As stated above, the trial court sentenced Castle to 18 months in prison.

**{¶ 8}** Castle raises three assignments of error on appeal, each of which relates to his sentence.

**{¶ 9}** In reviewing felony sentences, appellate courts must apply the standard of

---

[1] The exact amounts and nature of the drugs were specified in the Bill of Particulars, filed on December 21, 2015.

review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, Ohio Supreme Ct. Slip Opinion No. 2016-Ohio-1002, ¶ 9.   Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.   We do not review a trial court's sentence for an abuse of discretion.   *Marcum* at ¶ 10.

## II.    Imposition of a Prison Term, Not Community Control Sanctions

{¶ 10}  In his first and second assignments of error, Castle argues that the trial court erred in sentencing him to prison, rather than to community control sanctions.

{¶ 11}  R.C.   2929.13(B)(1)(a)   states   that,   except   as   provided   in   R.C. 2929.13(B)(1)(b), an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense *shall* be sentenced to a community control sanction of at least one year's duration, if certain criteria apply.   R.C. 2929.13(B)(1)(b) provides that a court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of eleven listed circumstances apply, including that the offense was committed while having a firearm on or about the offender's person or under the offender's control (R.C. 2929.13(B)(1)(b)(i)) or that the offense was committed for hire or as part of an organized criminal activity (R.C. 2929.13(B)(1)(b)(ix)).

{¶ 12}  Courts use various language in describing the requirements and interplay of R.C. 2929.13(B)(1)(a) and (b).   Some courts have referred to R.C. 2929.13(B)(1)(a)'s

requirement that community control be imposed if all of the qualifying conditions are met and none of the exceptions set forth in R.C. 2929.13(B)(1)(b) applies as a "presumption" of community control, whereas others refer to community control as "mandatory," subject to certain conditions and exceptions. The bottom line is that the statutory requirement to impose community control for qualifying fourth and fifth degree non-violent offenses is subject to certain fact-finding by the trial court.

{¶ 13} In this case, the trial court's findings were that Castle committed the offense as part of an organized criminal activity and while having a firearm on or about his person.

*Organized Criminal Activity*

{¶ 14} The term "organized criminal activity" (R.C. 2929.13(B)(1)(b)(ix)) is not defined in R.C. Chapter 2929. Ohio courts have applied a case-by-case analysis to determine whether an offense is part of an organized criminal activity, keeping in mind that the absence of a definition of "organized criminal activity" is to be construed against the State, not the defendant. *State v. Lyles*, 8th Dist. Cuyahoga No. 97524, 2012-Ohio-3362, ¶ 13, and R.C. 2901.04(A). "There is not a bright line test for 'organized criminal activity,' nor does it have a singular application." *State v. Orms*, 10th Dist. Franklin No. 14AP-750, 2015-Ohio-2870, ¶ 24.

{¶ 15} Courts have generally considered the scope and length of the criminal activity, whether the offense was committed spontaneously/impulsively or with extensive planning, the number of people involved, and the nature of the charges in determining whether there was "an organized criminal activity." *See, e.g., Orms*; *State v. Coran*, 2d Dist. Clark No. 2003-CA-80, 2004-Ohio-6874; *State v. Miller*, 4th Dist. Washington No. 07CA1, 2008-Ohio-1059; *State v. Radcliff*, 10th Dist. Franklin No. 97APA08-1054, 1998

WL 120304 (Mar. 17, 1998).

{¶ 16} Several cases also reference the definition of organized criminal activity set forth in R.C. 177.01(E)(1), but this definition references the offense of "engaging in a pattern of corrupt activity" (which is not at issue in this case), and at least one court has noted that "there is no basis for the application of a definition found in the creation of a legislative commission to the criminal code." *Lyles* at ¶ 12, citing *State v. Young,* 62 Ohio St.2d 370, 406 N.E.2d 499 (1980). *See also State v. Cuble*, 4th Dist. Washington No. 07CA37, 2008-Ohio-4602, ¶ 14 ("[I]f the Ohio General Assembly intended for R.C. 177.01(E)(1) to be the definition of organized criminal activity, they could have written that preference into the statute.")

{¶ 17} As the trial court observed, there is some disagreement among appellate districts about the extent to which the drug sales inherent in drug trafficking can also constitute "an organized criminal activity" for purposes of imposing prison time instead of community control. Some courts seem to have held that, by its nature, a trafficking offense is part of an organized criminal activity. *See, e.g, State v. King*, 6th Dist. Lucas No. L-98-1005, 1998 WL 484135 (Aug. 14, 1998). But we view this requirement differently. We addressed the issue in *State v. Coran*, 2d Dist. Clark No. 2003-CA-80, 2004-Ohio-6874, wherein we adopted the view set forth by the Eleventh District in *State v. Eckliffe*, 11th Dist. Lake No. 2001-L-104, 2002-Ohio-7135:

> Because virtually every street level drug deal involves some element of organized criminal activity, we presume that the legislature considered the element of organized criminal activity inherent in trafficking in cocaine when it determined that said offense was a felony of the fifth degree. * * * [B]y

its very nature, trafficking in cocaine denotes participation in organized criminal activity. Nevertheless, we determine that the trial court should make findings that support a conclusion that a particular trafficker's involvement in organized criminal activity is greater than normal for someone engaged in the street sale of illicit drugs. It is inappropriate for the court to find that an offender's participation in organized criminal activity inherently involved in any level of trafficking would be sufficient to make his offense more serious than normal.

*Eckliffe* at *¶ 26; Coran* at ¶ 17. Thus, in *Coran*, we adopted the view that "an organized criminal activity," in the case of a drug trafficking offense, must be supported by something more than "random activity carried about by a single individual," and by activity greater than what would be normally expected for someone involved in the street sale of illicit drugs. *Coran* at ¶ 17-19.

{¶ 18} The trial court made several findings in support of its conclusion that Castle had engaged in "organized criminal activity" beyond that inherent in drug trafficking. Specifically, the court noted the amount of marijuana sold; the fact that several other trafficking offenses involving large amounts of drugs were dismissed as part of the plea agreement; the large amount of currency (over $44,000) found at Castle's home, and his willingness to forfeit it as part of the plea agreement; the nine firearms that were also seized from his home; Castle's admission to detectives that he had been selling marijuana in Clark County for several years; his admission that his supplier was a "biker gang"; and Castle's ability to summon an "accomplice" to deliver drugs to the confidential informant when he (Castle) was unable to do so himself.

{¶ 19}  Although not all of these factors demonstrates, individually, drug trafficking activity greater than what would normally constitute that offense, we agree with the trial court that these factors, taken together, support this conclusion.   In particular, Castle's admission to engaging in long-standing drug dealing in the area and to having a regular supplier of the drugs (the biker gang), and the ease with which he was apparently able to summon help in this enterprise when he could not facilitate a particular sale himself, support the trial court's finding of "an organized criminal activity."   The trial court's finding in this respect, and its decision to impose a prison sentence on this basis, were not clearly and convincingly unsupported by the record.

*Having a Firearm On or About the Offender's Person*

{¶ 20}  The second basis for the trial court's conclusion that a prison sanction was available was its finding that "nine firearms were at the Defendant's residence so near his person as to be conveniently accessible and within his immediate reach" at the time of the offense. The court further stated, "While the firearms perhaps were not on the Defendant's person, * * * they were within his immediate physical reach and were conveniently accessible to him."   However, the bases for this conclusion are unclear.

{¶ 21}  R.C. 2929.13(B)(1)(b)(i) provides that a court may impose a prison term rather than community control if the offender committed the offense while having a firearm on or about the offender's person or under the offender's control.   Having a firearm on or about one's person or under one's control is analogous to the principle of having a weapon "ready at hand," for purposes of Ohio's concealed carry law, R.C. 2923.12(A). "Ready at hand" means "so near as to be conveniently accessible and within immediate physical reach."   *State v. Davis*, 115 Ohio St.3d 360, 2007-Ohio-5025, 875 N.E.2d 80,

¶ 29, citing *State v. Miller,* 2d Dist. Montgomery No. 19589, 2003-Ohio-6239, ¶ 14. The trial court relied on a very similar definition set forth in the Ohio Jury Instructions. *See* 2 Ohio Jury Instructions (2008) Section 4, at 127; *State v. Smith,* 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 11.

{¶ 22} One of the police reports attached to the presentence investigation stated that, on July 15, 2015, when the search warrant was executed, "loaded firearms were found in the home" and firearms were found inside the locked safe in the basement of the home (to which Castle gave the officers access). The bill of particulars seems to state that all of the weapons were found in the safe. Neither the police reports nor other aspects of the PSI, the plea hearing, or the sentencing hearing provides any information about the specific location of any firearms found in the house (outside of the safe), if any. Further, there is no indication that Castle and his accomplice (the deliverer of the drugs to the confidential informant) went into the basement, and the offense to which Castle pled guilty did not include a firearm specification. In our view, having weapons in a locked safe in the basement of a home (or, arguably, even at some other, unspecified location inside a home) two weeks after the offense does not establish that they were within Castle's immediate physical reach and/or conveniently accessible at the time of the offense.

{¶ 23} Although there is no question that firearms were present in Castle's home, there is simply no evidence in the record to support the trial court's conclusion that Castle had a firearm on or about his person or within his immediate physical control at the time of the trafficking offense. However, insofar as the trial court's conclusion about Castle's involvement in an organized criminal activity was supported by the record, the absence

of evidence about the accessibility of the firearm(s), as a basis for imposing a prison sentence, was not prejudicial.

**{¶ 24}** The first and second assignments of error are overruled.

### III. Imposition of Maximum Sentence

**{¶ 25}** In his third assignment of error, Castle argues that the seriousness and recidivism factors did not justify the maximum, 18-month prison sentence.

**{¶ 26}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard,* 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 27}** R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony

sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 28} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense. These factors include whether the physical or mental injury to the victim was exacerbated because of the physical or mental condition of the victim; serious physical, psychological, or economic harm suffered by the victim as a result of the offense; whether the offender's relationship with the victim facilitated the offense; and whether the offender committed the offense for hire or as a part of an organized criminal activity. R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record.

{¶ 29} As discussed above, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either that the record does not support the trial court's findings or that the sentence imposed is contrary to law. R.C. 2953.08(G)(2); *Marcum* at ¶ 10.

{¶ 30} The trial court did not elaborate on its findings with respect to the principles and purposes of sentencing or the seriousness and recidivism factors, nor was it required to do so. The PSI found that Castle's risk level was moderate and recommended "community supervision." The PSI noted that Castle had one prior conviction as an adult

(theft, a misdemeanor), was employed, and connected his drug dealing with an addiction to opioid painkillers, which resulted from an injury in 2007. However, numerous other charges against Castle were dismissed in exchange for his plea to a single offense, and the record supports that this was not an isolated offense. Although the trial court did not specifically state why it concluded that the maximum prison sentence was appropriate in this case, we cannot clearly and convincing find that the sentence was unsupported by the record.

**{¶ 31}** The third assignment of error is overruled.

## IV. Conclusion

**{¶ 32}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Megan M. Farley
Argeri A. Lagos
Hon. Douglas M. Rastatter