[Cite as *State v. Sweeting*, 2013-Ohio-5097.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO. C-120733
                                                   TRIAL NO.  B-1107880
     Plaintiff-Appellee,           :

     vs.                           :

DERRICK SWEETING,                       :          *O P I N I O N.*

     Defendant-Appellant.          :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause
                              Remanded

Date of Judgment Entry on Appeal:  November 20, 2013


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro,* for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge**.

{¶1} Following a jury trial, defendant-appellant Derrick Sweeting appeals from the convictions and sentences imposed for his aggravated robbery of a liquor store and a convenience store. Despite being under a disability from a prior felony conviction, Sweeting had robbed both stores at gunpoint. At trial, the jury acquitted Sweeting of charges stemming from a third aggravated robbery. Because the trial court imposed consecutive felony sentences without making the statutorily required findings, and failed to give the required postrelease-control warnings, we must vacate the imposed sentences and remand the case for resentencing. We affirm the trial court's judgment in all other respects.

{¶2} On the afternoon of November 19, 2011, a person matching Sweeting's description and wearing a black, hooded sweatshirt entered Twigg's Carryout in Sharonville, Ohio. He left the store after asking the clerk a question. When the other customers left the store, Sweeting returned wearing the same hooded sweatshirt. He used a red bandanna as a mask and brandished a black, semiautomatic handgun with an extended magazine. Sweeting ordered the clerk to turn over the store's money or be killed. These events were captured on the store's video-surveillance system.

{¶3} Police investigators also suspected that Sweeting had robbed a Marathon gas station on November 20, 2011. Evidence gained in the investigation resulted in a video recording of Sweeting purchasing minutes for his cellular telephone.

{¶4} The next day, Sweeting, again wearing the black hooded sweatshirt and the red bandanna as a mask, and carrying a black, semiautomatic handgun, robbed the Food Mart convenience store in Blue Ash, Ohio. The video recording from the store also revealed unusual markings on Sweeting's shoes.

{¶5} Three days later, police investigating a report of multiple shots fired in an area near the other robberies, arrested Sweeting. In his waistband, they found a black,

2

Kel-Tec .380 semiautomatic handgun with an extended magazine. Live ammunition for the handgun was found wrapped in a red bandanna in his pants pocket. A search of Sweeting's home revealed shoes with the same markings seen in the Food Mart video recording. Images taken from Sweeting's Facebook page showed him wearing a black hooded sweatshirt and a red bandanna.

{¶6} At trial, a Cincinnati Bell security manager, in possession of the records of Sweeting's cellular telephone, testified that because a cellular telephone will usually employ the nearest cellular tower to relay texts and phone calls, the records showed Sweeting's cellular telephone had been used near the scene of each robbery at times near to the events charged in the indictment. But under cross-examination, the witness admitted that cellular phones do not always employ the nearest cell tower and that Sweeting could have been three miles or more away from the towers.

{¶7} At trial, Sweeting stipulated to a prior conviction for aggravated assault that had placed him under a disability. At the conclusion of the trial, the jury returned guilty verdicts for each offense related to the Twigg's Carryout and the Food Mart robberies. It also returned verdicts of not guilty for charges stemming from the Marathon robbery.

{¶8} Nearly three months later, the trial court held a sentencing hearing. The trial court afforded Sweeting the protection of the multiple-counts statute by finding that each charged robbery offense was an allied offense of aggravated robbery. The trial court then imposed four-year prison terms for each of the two aggravated-robbery offenses and ordered each to be served consecutively to an accompanying three-year firearm specification. The court imposed 18-month prison terms for each weapon-under-a-disability offense. The trial court then ordered that each prison term would be served consecutively for an aggregate sentence of 17 years. Sweeting brought this appeal.

### I. Batson *Challenges*

{¶9}   In his first assignment of error, Sweeting asserts that his equal-protection rights were violated when the trial court permitted the state to exclude two potential jurors based on race in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

{¶10}   Evaluation of a *Batson* challenge occurs in three steps: (1) the opponent of the peremptory strike must make a prima facie case of racial discrimination; (2) the state then offers a racially neutral explanation for the challenge; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination. *See State v. Were,* 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 61.   A trial court's determination that a challenge was not motivated by a discriminatory intent will not be reversed on appeal unless it is clearly erroneous. *See State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

{¶11}   Here, the state used peremptory challenges to excuse two African-Americans from the jury over Sweeting's objections.   But the state's subsequent race-neutral explanations for striking both prospective jurors demonstrated the absence of discriminatory intent in its use of peremptory challenges.  The state struck one prospective juror because of his youth and his lack of life experience, and struck the other because her religious beliefs would have made it difficult for her to pass judgment on another, and because she had family members who had previously been convicted of crimes in Hamilton County.  Consequently, we cannot say that the trial court erred in overruling Sweeting's objections to the state's challenges.  The first assignment of error is overruled.

### II. Lack of Cautionary Instructions Not Plain Error

{¶12}   In Sweeting's second assignment of error, he asserts that the trial court erred by failing to give curative instructions to the jury, including during "the final instructions," regarding the jury's use of Sweeting's prior conviction for aggravated

4

assault. The state was required to prove this prior conviction as an element of the weapons-while-under-disability offenses.

{¶13} As Sweeting made no objection or request for a curative instruction, any error, save plain error, was waived. *See State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 182; *see also* Crim.R. 30(A) and (B).

{¶14} We note that the trial court in fact had charged the jury that the stipulation that Sweeting had been convicted of aggravated assault in 2009 was admitted "for the purposes of your determination of the weapon under disability charge which states that he was so convicted and then possessed a gun illegally." In light of the jury's decision to acquit Sweeting of the offenses surrounding the Marathon robbery, we cannot say that the jury impermissibly used the stipulation of prior criminal conduct to conclude that he had acted in a similar manner in these offenses. *See* Evid.R. 404(B). Since we do not conclude that the outcome clearly would have been different absent the alleged error, we overrule the assignment of error. *See* Crim.R. 52(B); *see also State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

### III. Trial Counsel's Spirited Defense

{¶15} Sweeting next argues that he was denied the effective assistance of counsel for various claimed deficiencies, including counsel's failure to object to the testimony of witnesses who had identified Sweeting from the store videotapes, her failure to object to the admission of cellular-telephone-tower usage data, and her failure to seek cautionary instructions for the use of Sweeting's prior criminal offense. The arguments are feckless.

{¶16} To prevail on a claim of ineffective assistance of trial counsel, an appellant must show, first, that trial counsel's performance was deficient and, second, that the deficient performance was so prejudicial that he was denied a reliable and fundamentally fair proceeding. *See Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *see also Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two

and three of the syllabus. A reviewing court will not second-guess trial strategy and must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998).

{¶17} Here, Sweeting's trial counsel worked vigorously to discredit the state's theory of the case and conducted a spirited defense. She succeeded to a substantial degree, in that Sweeting was acquitted of the offenses surrounding the Marathon robbery. Before trial, counsel also had moved successfully for severance of yet another convenience store robbery, as charged in counts 10, 11, and 12, from this trial. Her vigorous cross-examination of the state's witnesses revealed the deficiencies in the use of cell-tower data. After reviewing the entire record, and in light of our resolution of the second assignment of error, we hold that counsel's efforts were not deficient, and that Sweeting was not prejudiced in any way. The result of the trial was reliable and fundamentally fair. The third assignment of error is overruled

### IV. Sufficiency and Weight-of-the-Evidence Claims

{¶18} In his fourth assignment of error, Sweeting challenges the weight and sufficiency of the evidence adduced at trial to support his convictions. Sweeting argues that there was little physical evidence linking him to the robberies, that the videotape evidence of the robberies did not permit a clear identification of Sweeting as the perpetrator, and that data indicating that his cellular phone had been used near the robbery sites was equivocal at best.

{¶19} But the state presented ample evidence to support the convictions. The state introduced the videotapes of the Twigg's Carryout and the Food Mart robberies showing a perpetrator that matched Sweeting's description using a firearm to obtain cash. Data of usage from Sweeting's cellular telephone placed him near the scene of the robberies at the time the offenses had occurred. The clothing that he

was wearing during the robberies was nearly identical to clothing that Sweeting wore in his Facebook profile images. That clothing was found inside his home, and on his person when taken into custody. The handgun that Sweeting was carrying when arrested had the same extended magazine as the handgun wielded by the perpetrator in the robbery videos. Sweeting stipulated that he had a prior conviction that had placed him under a disability.

{¶20} We note that direct and circumstantial evidence inherently possess the same probative value. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. Thus while there were inconsistencies in witnesses' testimony and the evidence adduced at trial, the weight to be given that evidence and the credibility of the witnesses were for the jury, acting as the trier of fact, to determine in resolving conflicts and limitations in the testimony. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Our review of the entire record fails to persuade us that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The jury was entitled to reject Sweeting's theory that the state had failed to adduce anything more than circumstantial evidence to prove he had committed the robberies.

{¶21} Moreover, the record reflects substantial, credible evidence from which the jury could have reasonably concluded that all elements of the charged crimes had been proved beyond a reasonable doubt. *See State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 36. The fourth assignment of error is overruled.

### V. Consecutive-Sentencing & Postrelease-Control Errors

{¶22} Finally, Sweeting contends that his aggregate sentence was contrary to law because the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences. He also calls this court's attention to the fact that the trial court had failed to provide postrelease-control warnings at sentencing.

{¶23} The sentencing court's compliance with R.C. 2929.14(C)(4) involves a three-step process that flows from the statute. *See State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 13, 15, and 16. Although the court is not required to use "talismanic words" to comply with the statutory-findings requirement, the trial court satisfies the requirements of R.C. 2929.14(C)(4) when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *Id.* at ¶ 16.

{¶24} Consecutive sentences imposed without the findings required by R.C. 2929.14(C)(4) are contrary to law and must be vacated. *State v. Cowins*, 1st Dist. Hamilton No. C-120191, 2013-Ohio-277, ¶ 36.

{¶25} Here, the trial court ordered Sweeting to serve each imposed prison term consecutively. The state concedes, and we have confirmed, that the trial court failed to make the findings to support these consecutive sentences. The consecutive sentences were thus contrary to law and we must vacate them. *Cowins* at ¶ 37.

{¶26} We also agree that the trial court failed to provide Sweeting with postrelease-control warnings at the sentencing hearing. The trial court was statutorily required to provide Sweeting with postrelease-control warnings as part of his sentences for each of his first- and third-degree felony offenses. *See* R.C. 2929.19(B)(2)(c)-(e); *see also State v. Kennedy*, 1st Dist. Hamilton No. C-120337, 2013-Ohio-4221, ¶ 119. The trial court's failure to comply with the statutory postrelease-control notification requirements after imposing prison terms for those felony offenses renders that part of those sentences

void. *See State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26. The fifth assignment of error is sustained.

### *VI. Conclusion*

{¶27}    Therefore, we vacate that portion of the trial court's judgment ordering that the sentences for aggravated robbery and having a weapon under a disability as charged under counts one, three, seven, and nine be imposed consecutively. The matter is remanded to the trial court for it to consider whether consecutive sentences for those offenses are appropriate under R.C. 2929.14(C), and if so, to make the proper findings on the record. Further, the trial court must provide Sweeting with the appropriate postrelease-control notifications. Finally, the sentencing entry mistakenly indicates that Sweeting had pleaded guilty to the charged offenses. The trial court should correct this matter when resentencing Sweeting.

{¶28}    In all other respects we affirm the trial court's judgment.

Judgment accordingly.

**HENDON, P.J.,** and **DEWINE, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.