[Cite as *State v. Valines*, 2014-Ohio-890.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO. C-130105
                                                   TRIAL NO. B-1107644
    Plaintiff-Appellee,          :

 vs.                                    :          *O P I N I O N.*

ANTONIO VALINES,                        :

    Defendant-Appellant.         :

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Sentences Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  March 12, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro,* for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**HILDEBRANDT, Judge.**

{¶1}     Defendant-appellant Antonio Valines appeals the judgment of the Hamilton County Court of Common Pleas convicting him of aggravated murder with a firearm specification and having a weapon while under a disability.  He was convicted after a jury trial.

### A Drug Transaction and a Robbery

{¶2}     One evening in November 2011, Dionte Armstead went to the Mt. Airy neighborhood of Cincinnati to sell a quantity of marijuana.  Later that same night, Cincinnati police officers responded to a report of shots fired at an apartment complex in Mt. Airy.

{¶3}     When the officers arrived at the complex, they saw Cortaize Parker in the parking lot.  Parker was throwing a digital scale into a garbage can and seemed very agitated.  The officers took Parker into custody and entered one of the buildings of the apartment complex.

{¶4}     Once inside, the officers found the body of Armstead in the second-floor hallway.  He had been shot numerous times.  Outside the apartment building, the officers found a Glock handgun and a large amount of marijuana concealed in a wooded area.

{¶5}     Soon after, the investigating officers received a report that a gunshot victim had been taken to the University of Cincinnati Medical Center.  The officers went to the hospital and discovered that Valines had been shot.  They interviewed Valines, who told the officers that he had been shot in an attempted robbery in the Avondale neighborhood of Cincinnati.

2

{¶6}     Subsequently, Valines told the officers that he had been involved in the Mt. Airy shooting, but that he had been the victim of an attempted robbery. Valines maintained that he had shot Armstead in self-defense after he had been fired upon.

{¶7}     At trial, Parker testified that he was staying at the apartment complex on the day of the shooting, and Valines had called him to borrow a scale. Parker had intended to retrieve the scale from his car and take it into the apartment building. But after he had heard gun shots coming from the building, he had decided to dispose of the scale instead. Parker confirmed that Valines had been known to carry a Glock handgun.

{¶8}     The state presented evidence that Armstead had died as a result of gunshot wounds and that the bullets found in Armstead's body were consistent with having been fired from the Glock found outside the apartment building.

{¶9}     Valines testified that he had arranged to buy marijuana from his father and a man named Dionte Thompson. According to Valines, he was also going to sell a Glock handgun to his father while buying marijuana from the pair. But Valines testified that his father had not come to the apartment complex at the appointed time. Instead, Thompson and Armstead had arrived at the complex's parking lot and held him at gunpoint.

{¶10}     Valines testified that, despite being held at gunpoint, he had asked Thompson and Armstead to follow him into the apartment building so that he could weigh the marijuana. Valines testified that he had exchanged the money for the marijuana after they had gone inside. But he stated that Armstead had taken the marijuana back from him and had given it to Thompson. Then, according to Valines, Armstead had begun shooting at him.

{¶11}     Valines testified that he had grabbed the marijuana back from Thompson and had shot at Armstead while fleeing from the hallway of the apartment building.  Valines stated that he had left the building with the marijuana and that he had concealed both it and the Glock in the wooded area near the apartment building.

{¶12}     Valines stipulated that he had been convicted of a prior robbery in 2007 that had given rise to a legal disability.

{¶13}     The jury found Valines guilty, and the trial court sentenced him to life imprisonment without the possibility of parole for aggravated murder; to a consecutive three-year prison term for the firearm specification; and to another consecutive 36-month term for having a weapon under disability.

### Prior-Acts Evidence

{¶14}     In his first assignment of error, Valines argues that the trial court erred in admitting improper prior-acts evidence.  Specifically, he contends that the state was allowed to adduce inadmissible evidence about his previous robbery and about his reputation for carrying a Glock handgun.

{¶15}     We first note that because Valines did not object to the admission of the evidence, we review the record for plain error.  Under the plain-error standard, we must affirm the conviction unless, but for the allegedly inadmissible evidence, the outcome of the trial would have been different.  *See State v. Lukacs,* 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 34 (1st Dist.).

{¶16}     Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Demonstration of a defendant's modus operandi is

4

admissible under this rule if a prior criminal offense committed by an accused is related to and shares "common features with the crime in question." *State v. Bey,* 85 Ohio St.3d 487, 491, 709 N.E.2d 484 (1999), quoting *State v. Lowe,* 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus.

{¶17}     In this case, there was no plain error in the admission of the evidence. The state demonstrated that, in the prior robbery, Valines had lured his victims to a designated location under the pretense of wanting to engage in a drug transaction. He then robbed the victims at gunpoint. This same ruse was also the alleged modus operandi in the instant case. The prior-acts evidence was therefore admissible under Evid.R. 404(B). As for the testimony that he had been known to carry a gun, we cannot say that such evidence likely affected the outcome of the trial, in light of the other evidence adduced by the state. We overrule the first assignment of error.

### Prosecutorial Misconduct

{¶18}     In his second assignment of error, Valines argues that the assistant prosecutor made improper remarks to the jury and introduced inadmissible evidence in violation of Valines's right to a fair trial. Specifically, he argues that the prosecutor made improper comments about his truthfulness and about the lack of evidence to corroborate his testimony, and that the prosecutor improperly adduced evidence about the prior robbery. Valines failed to object to these alleged instances of misconduct, and we again review the record for plain error.

{¶19}     The test for prosecutorial misconduct is whether the prosecutor's questions or remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Glenn,* 1st Dist. Hamilton No. C-090205, 2011-Ohio-829, ¶ 52, citing *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883

(1984), and *State v. Canyon,* 1st Dist. Hamilton Nos. C-070729, C-070730, and C-070731, 2009-Ohio-1263, ¶ 17.

{¶20}    Once again, we find no plain error.  The prosecutor's statements about Valines's veracity focused on the evolving nature of his account of the events during the investigation and how his previous statements diverged from his trial testimony.  Thus, the statements were fair comments on the evidence.

{¶21}    And while comments about a defendant's failure to present evidence can certainly be improper under certain circumstances, we find no impropriety in this case.  Here, Valines asserted self-defense, which he was required to prove by a preponderance of evidence.  *See State v. Carmen,* 1st Dist. Hamilton No. C-120692, 2013-Ohio-3325, ¶ 14.  The prosecutor merely argued that Valines had not met his burden and that his testimony did not withstand scrutiny.  The comments did not tend to improperly shift the burden of proof or otherwise deprive Valines of a fair trial.

{¶22}    Next, though the prosecutor also referred to Valines as a "thief" and a "predator," these and similar references were based upon conduct that was properly in evidence.  As for the evidence and comments about the prior robbery, we have addressed that issue under the first assignment of error.  The second assignment of error is overruled.

### Performance of Trial Counsel

{¶23}    In his third assignment of error, Valines maintains that he was deprived of the effective assistance of trial counsel.

{¶24}    To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance.  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶25}  In this case, we find no deficiency on the part of trial counsel. Valines first argues that counsel was derelict in failing to object to the prior-acts evidence and to the alleged instances of prosecutorial misconduct.  For the reasons we have already stated, there was either no basis for objection or no prejudice resulting from counsel's performance.

{¶26}  Valines also contends that counsel failed to object to the admission of a statement he had made at the hospital on the night of the alleged offenses.  But because the record does not disclose any basis for the exclusion of the statement, we find no merit in this argument.

{¶27}  Valines also asserts that the prosecution was permitted to lead its witnesses without objection and that defense counsel failed to more vigorously assert that he had acted in self-defense.  But as this court has held numerous times, we "will not second-guess trial strategy and must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *See, e.g., State v. Sweeting,* 1st Dist. Hamilton No. C-120733, 2013-Ohio-5097, ¶ 16.  Valines has failed to overcome that presumption here, and we overrule the third assignment of error.

### Sufficiency and Weight of the Evidence

{¶28}  In his fourth assignment of error, Valines argues that his convictions were based on insufficient evidence and were against the manifest weight of the evidence.

{¶29}  In reviewing the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

7

the essential elements of the crime beyond a reasonable doubt." *State v. Waddy*, 63 Ohio St.3d 424, 430, 588 N.E.2d 819 (1992). To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶30} The aggravated-murder statute, R.C. 2903.01(B)(1), provides that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery * * *." R.C. 2911.01(A)(1), governing aggravated robbery, provides that "[n]o person, in attempting or committing a theft offense ** * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person * * * and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *."

{¶31} In this case, the convictions were in accordance with the evidence. The state presented evidence that Armstead had gone to the apartment complex with a large amount of marijuana and that Valines had fatally shot him. Valines's possession of the marijuana and the Glock after the shooting of Armstead supported the state's assertion that Valines had taken the marijuana from Armstead and his companion by force. The jury apparently rejected Valines's contention that he had paid for the marijuana and that he had himself been the victim of an attempted robbery.

{¶32} Still, Valines argues that his attempt to obtain a scale was inconsistent with the state's theory that he had intended to rob the victims. He

8

contends that his telephone call to Parker while he was meeting with Armstead and Thompson demonstrated his intent to purchase the marijuana. We find no merit in this argument. Valines's telephone call about the scale was consistent with the state's theory that he had intended to lure the victims into the apartment building where he could rob them; the request to weigh the marijuana was simply part of the subterfuge. In any event, these issues of fact were properly submitted to the jury, which resolved the issues in favor of the state. We cannot say that the jury lost its way in finding Valines guilty, and we overrule the fourth assignment of error.

**Sentencing**

{¶33}     In his fifth and final assignment of error, Valines argues that the court erred in its sentence. Valines contends that the trial court erred by failing to consider the proper statutory factors before imposing a life sentence without the possibility of parole. We find no merit in this argument. The court conducted a thorough sentencing hearing during which it explicitly considered Valines's abysmal criminal record, noted that Valines posed a danger to society, and found that Valines was not amenable to rehabilitation. The record supports those findings, and the sentence was not contrary to law. *See, generally,* R.C. 2953.08(G)(2); *State v. White,* 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.). We overrule, in part, the fifth assignment of error.

{¶34}     Valines also argues that the court erred by imposing consecutive sentences for aggravated murder and possessing a weapon under disability without making the requisite statutory findings. *See* R.C. 2929.14(C)(4). The state concedes that the trial court failed to make the necessary findings, and we accordingly sustain, in part, the fifth assignment of error.

**Conclusion**

{¶35}     We vacate the sentences and remand the cause for resentencing in accordance with law.  In all other respects, we affirm the judgment of the trial court.

Judgment affirmed in part, sentences vacated in part, and cause remanded.

**CUNNINGHAM, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.