[Cite as *State v. Stokes*, 2016-Ohio-7520.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

STATE OF OHIO                              :
                                           :
    Plaintiff-Appellee             :   C.A. CASE NO. 2016-CA-4
                                           :
v.                                         :   T.C. NO. CRB1501268
                                           :
DAVID L. STOKES                            :   (Criminal appeal from
                                           :    Municipal Court)
    Defendant-Appellant            :
                                           :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____28th____ day of ____October____, 2016.

. . . . . . . . . .

BETSY A. DEEDS, Atty. Reg. No. 0076747, Assistant Prosecuting Attorney, 510 West Main Street, Fairborn, Ohio 45324
      Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 N. Detroit Street, Xenia, Ohio 45385
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant David L. Stokes appeals his conviction and sentence for one count of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree. Stokes filed a timely notice of appeal with this Court on January 28, 2016.

{¶ 2} The incident which forms the basis for the instant appeal occurred on July 4, 2015, when the victim, Jason Henderson, was attacked by Stokes in the front yard of his

residence located at 469 Florence Avenue in Fairborn, Ohio. At the time of the attack, Henderson had just dropped off his daughter at the home of a neighbor who lives on the same street as Stokes. After dropping his daughter off, Henderson walked down the street to return the child's stroller to her mother, Cara Shaw, who lives next door to Stokes at 475 Florence Avenue.

{¶ 3} Upon leaving Shaw's residence, Henderson allegedly walked across a portion of Stokes' yard. Stokes observed Henderson walk through part of his yard through the glass screen door on the front of his house. At that point, Stokes ran out of his house, tackled Henderson, slammed him to the ground, and began punching him in the face. As a result of the attack, Henderson suffered a large gash on his head and several raised knots. Henderson was later treated for his injuries at Soin Medical Center.

{¶ 4} Shaw testified that she was standing on her front porch when Henderson initially arrived to return the stroller. Henderson put the stroller in Shaw's garage and began to walk through the yard back towards the street. Shaw then observed Stokes "come running like a football player" and tackle Henderson to the ground and strike him several times with his fists. Shaw testified that it appeared as if Henderson did not see Stokes before he was tackled and had no opportunity to defend himself. Shaw further testified that she ran over to where the altercation was taking place and began yelling at Stokes to stop hitting Henderson. It was only when another neighbor, Joyce Jarvis, ran over and yelled at Stokes to stop that he stopped beating Henderson, got up, and went back into his house. Shaw also testified that she was the individual who called 911.

{¶ 5} Fairborn Police Officers Sortman and Osburn responded to the scene of the attack. Officer Sortman interviewed Jarvis and also viewed a video recorded by

surveillance equipment installed by Stokes outside of his residence. Officer Sortman testified that the video captured part of the interaction between Henderson and Stokes. Specifically, Officer Sortman testified that the video depicted Henderson walking diagonally across Stokes' yard. The video then shows Stokes burst out of his front door and run directly at Henderson. Officer Sortman testified that the surveillance camera was unable to record the actual physical attack because of its placement on Stokes' house.

{¶ 6} Officer Osburn testified that he interviewed Shaw and Henderson when he arrived at the scene. Officer Osburn described Shaw as hysterical and noted that Henderson was obviously injured with a cut above his right eye, a large knot and bruising by his left eye, and grass in his hair. Officer Sortman also questioned Stokes who admitted to tackling Henderson to the ground and punching him. Officer Osburn further testified that he watched the surveillance video with Officer Sortman, and he observed that Stokes ran out of his house at high speed directly towards where Henderson was walking. Upon concluding his investigation, Officer Osburn placed Stokes under arrest for the assault of Henderson.

{¶ 7} Stokes testified on his own behalf at trial, claiming that he was acting in self-defense when he tackled Henderson and struck him. Stokes testified that he had issues with Henderson in the past and had warned him several times to stay out of his yard. Stokes also testified that he heard Henderson yelling at him in his front yard. Stokes testified that he went to investigate the yelling and observed Henderson standing in his front yard taunting him. Stokes further testified that he ran out of his house, as depicted in the surveillance video, and confronted Henderson. Stokes testified that Henderson

then attempted to remove something out of his pants pocket. Allegedly fearing for his safety at this point, Stokes tackled Henderson to the ground and struck him several times in his face.

{¶ 8} A misdemeanor complaint for assault was filed against Stokes in Fairborn Municipal Court on July 6, 2015. At his arraignment on the same day, Stokes, acting pro se, entered a plea of not guilty to the charged offense. Thereafter, counsel for Stokes filed a notice of appearance on July 24, 2015, and entered a plea of not guilty on his client's behalf.

{¶ 9} A jury trial was held on December 2, 2015, after which Stokes was found guilty of misdemeanor assault. The trial court ordered the adult probation department to conduct a presentence investigation report (PSI). On December 29, 2015, the trial court sentenced Stokes to 180 days in jail, suspended 150 days of his sentence, and ordered him to serve twenty-nine days of house arrest with an alcohol monitoring device and work release. The trial court gave Stokes jail time credit of one day and ordered him to pay a fine of $200.00. Stokes was also ordered to pay $1,650.62 in restitution to Soin Medical Center and was ordered to have no contact with Henderson.

{¶ 10} It is from this judgment that Stokes now appeals.

{¶ 11} Stokes' first assignment of error is a follows:

{¶ 12} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 13} In his first assignment, Stokes contends that he received ineffective assistance when his trial counsel failed to move for an acquittal pursuant to Crim.R. 29 at the close of the State's case as well as the conclusion of Stokes' case.

{¶ 14} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Bradley* , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

{¶ 15} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *Id.*

{¶ 16} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. *Bradley* at

143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland* at 694.

{¶ 17} In order to establish ineffective assistance of counsel, there must be a showing that counsel's performance fell below an objective standard of reasonable representation and, in addition, that prejudice arose from counsel's performance. Failure to move for an acquittal under Crim.R. 29 is not ineffective assistance of counsel, where the evidence in the State's case demonstrates that reasonable minds can reach different conclusions as to whether the elements of the charged offense have been proved beyond a reasonable doubt, and that such a motion would have been fruitless. *State v. Poindexter,* 2d Dist. Montgomery No. 21036, 2007-Ohio-3461, ¶ 29. In ruling on a Crim.R. 29 motion for acquittal, the trial court is obligated to view the evidence in a light most favorable to the prosecution. *State v. Bridgeman*, 55 Ohio St.2d 261, 263, 381 N.E.2d 184 (1978).

{¶ 18} In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). As is clear from the above analysis, the standard for a Crim.R. 29 motion is the same as the standard used in a challenge to the sufficiency of the evidence.

{¶ 19} A review of the record convinces us that the State's evidence identifying Stokes as the perpetrator of the assault, which consisted of the eyewitness testimony of Shaw and Henderson, as well as the testimony of Officers Osburn and Sortman, was

sufficient as a matter of law to overcome a Crim.R. 29 motion for judgment of acquittal at the end of the State's case. Additionally, the physical injuries sustained by Henderson are well documented by the evidence adduced at trial.

{¶ 20} Furthermore, Stokes testified that he tackled Henderson to the ground and struck him several times after he acted as if he was about to pull something out of his pocket. However, the jury was free to discredit Stokes' testimony that he acted in self-defense when he attacked Henderson. Had a motion for acquittal been made by defense counsel, it would have been properly overruled. When viewed in a light most favorable to the prosecution, rational minds could have reached the conclusion that the State proved that Stokes was the perpetrator of the charged offense beyond a reasonable doubt. Thus, defense counsel was not ineffective for failing to make a Crim.R. 29 motion at the close of the State's case or the conclusion of the case of the defense because sufficient evidence was adduced at trial to support Stokes' conviction.

{¶ 21} Stokes also argues that his trial counsel was ineffective for seeking advice from the bench regarding what questions counsel could ask the State's witnesses during cross-examination. Specifically, Stokes argues that his trial counsel failed to properly question Henderson and Shaw regarding inconsistencies in their direct testimony and their statements to the police. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 37 (2d Dist.), citing *Strickland, supra; State v. Parker,* 2d Dist. Montgomery No. 19486, 2003-Ohio-4326, ¶ 13.

**{¶ 22}** We have held that "trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters." *State v. Russell,* 2d Dist. Montgomery No. 21458, 2007-Ohio-137, ¶ 55. "A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy." *State v. Conley,* 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Smith,* 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *Id.,* citing *State v. Cook,* 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**{¶ 23}** In the instant case, the record establishes that Stokes' trial counsel was not ineffective during his cross-examinations of the State's witnesses. Throughout the trial, it is evident that the defense strategy was to establish that Henderson initiated the confrontation, and that Stokes was merely acting in self-defense when he assaulted Henderson. The record establishes that defense counsel vigorously cross-examined the State's witnesses, specifically Shaw and Henderson, regarding any prior inconsistent statements, as is evident from the following excerpts from the trial:

> Defense Counsel: Do you have any idea – you said that he ran at you and kind of bull rushed you; do you have any idea why that would happen?
>
> Henderson: Like I said, when he was beating me up [Stokes] said – he said he knew that – he said I know --- n****r I know you're the one who slashed my tires on his truck, I guess his tires got slashed and he said while he's beating me up he said I was doing it – that I did it, but I've been at the

homeless shelter for months before that even happened.

Q: Did you – did you write that out in your statement, those things that he said; do you recall?

A: I don't recall.

\*\*\*

Defense Counsel: Okay. You said you filled out a statement; I'd like to put it on the overhead and show you what you said that day. Is that your statement that – does this look like your statement that you made that day?

Shaw: Yes.

Q: And your signature is at the bottom here?

A: Yes, sir.

Although ultimately unsuccessful, the foregoing testimony establishes that defense counsel attempted to impeach Henderson and Shaw's credibility by questioning them about how their statements to police compared to their trial testimony.

{¶ 24} Furthermore, defense counsel presented three witnesses, including Stokes, who all testified that Henderson was the initial aggressor, and Stokes was simply defending himself. The fact that Stokes was ultimately found guilty of assault by the jury does not immediately lead to the conclusion that defense counsel was ineffective. Upon review, we conclude that Stokes has failed to establish that defense counsel's cross-examination of Henderson and Shaw fell below an objective standard of reasonableness.

{¶ 25} Stokes' first assignment of error is overruled.

{¶ 26} Stokes' second assignment of error is as follows:

{¶ 27} "THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE AND

SUSTAINING OBJECTIONS BY THE STATE OF OHIO."

{¶ 28} In his second assignment, Stokes argues that the trial court erred when it prohibited him from introducing certain prior bad acts of Henderson which could have bolstered his self-defense claim.

{¶ 29} Absent an error of law, the admission or exclusion of evidence is a matter committed to the discretion of the trial court, and its decision regarding the admission and exclusion of evidence will not be reversed absent a demonstration of an abuse of that discretion. *State v. Bell*, 176 Ohio App.3d 378, 2008–Ohio–2578, 891 N.E.2d 1280, ¶ 40 (2d Dist.). An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary or unconscionable. *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 30} Upon review, we find that contrary to Stokes' argument in this assignment, the record establishes that the trial court did allow defense counsel to cross-examine Henderson regarding prior bad acts but properly limited the amount of detail that could be presented to the jury. The trial court allowed Stokes to testify about his tires being recently slashed and his belief that Henderson was responsible. Additionally, Stokes was allowed to testify extensively regarding another prior incident where he alleged that Henderson had attempted to goad him into a fight in the street in front of Stokes' residence.

{¶ 31} However, when defense counsel attempted to elicit testimony regarding past incidents between Shaw and Stokes' girlfriend, Erin O'Kelley, the State objected and the trial court sustained the objection on relevance grounds. The trial court also properly sustained the State's objection to defense counsel's attempt to impeach regarding

Henderson's prior conviction for misdemeanor assault. Except for crimes of dishonesty, Evid.R. 609 does not provide for the admission of prior misdemeanor convictions, including assault or domestic violence, for purposes of impeachment. *See State v. Mayes*, 12th Dist. Madison No. CA99-01-002, 1999 WL 1270987 (Dec. 30, 1999). Appellant's prior misdemeanor assault conviction is neither a felony nor an offense involving dishonesty. Therefore, the trial court did not err when it prohibited defense counsel from attempting to impeach Henderson with evidence of his prior misdemeanor assault conviction.

{¶ 32} Stokes' second assignment of error is overruled.

{¶ 33} Stokes' third and final assignment of error is as follows:

{¶ 34} "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 35} In this assignment, Stokes argues that his conviction for assault is against the manifest weight of the evidence. In support, although he admitted to tackling Henderson and striking him several times, Stokes contends that the evidence he adduced at trial clearly establishes beyond a reasonable doubt that he was acting in self-defense.

{¶ 36} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only

in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 37}** This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

**{¶ 38}** Stokes was convicted of misdemeanor assault, in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

**{¶ 39}** With respect to Stokes' manifest weight argument, there was evidence in the record upon which the jury could rely in finding that Stokes ran out of his house, tackled Henderson, slammed him to the ground, and began punching him in the face. As a result of the attack, Henderson suffered a large gash on his head and several raised knots, while Stokes had no visible injuries. Furthermore, Stokes presented the affirmative defense of self-defense, which necessarily involves the admission of the conduct constituting assault. *See State v. Ashe*, 2d Dist. Montgomery No. 26528, 2016-Ohio-136, ¶ 39. On the self-defense issue, Stokes' argument is unpersuasive because both Henderson and Shaw's testimony supports a conclusion that Stokes was at fault in creating the situation giving rise to the affray. Under such circumstances, a self-defense claim necessarily fails. *State v. McDermott*, 2d Dist. Montgomery No. 21046, 2005-Ohio-5233, ¶ 11.

**{¶ 40}** It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton,* 2d Dist. Miami No. 2010–CA–27, 2012–Ohio–4080, ¶ 7. A trier of

fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here, the jury quite reasonably could have credited Henderson and Shaw's testimony that Stokes ran out of his house, tackled Henderson, slammed him to the ground, and began punching him in the face. The jury was free to disbelieve the basis for Stokes' self-defense testimony, namely that he observed Henderson attempt to take something out of his pocket before attacking him. Accordingly, the trial court did not lose its way and create a manifest miscarriage of justice in reaching a guilty verdict for assault.

{¶ 41} Stokes' third assignment of error is overruled.

{¶ 42} All of Stokes' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Betsy A. Deeds
Jay A. Adams
Hon. J. Timothy Campbell