[Cite as *State v. Evans*, 2018-Ohio-2534.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170034 |
| | | TRIAL NO. B-1605054 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| GREG EVANS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 29, 2018

*Sean Donovan*, Assistant Hamilton County Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro,*  for Defendant-Appellant.

**DETERS, Judge.**

{¶1}  Defendant-appellant Greg Evans was charged with aggravated burglary in violation of R.C. 2911.11(A)(1) and felonious assault in violation of R.C. 2903.11(A)(1). Following a bench trial, the trial court found Evans guilty of aggravated burglary, but it acquitted him of felonious assault. The trial court sentenced Evans to three years in prison for the aggravated-burglary offense.

{¶2}  In this appeal, Evans challenges the trial court's admission of evidence, the conduct of the prosecutor, defense counsel and the trial court at trial, and the sufficiency and weight of the evidence. Finding none of his assigned errors meritorious, we affirm the judgment of the trial court.

### *Evidence at the Bench Trial*

### *Ebony Brown*

{¶3}  At trial, Ebony Brown testified that in September 2016, she had been in a relationship with Evans for about a year. Although they had lived together in the past, they were not then living together. Evans would come over to her apartment and leave when she went to work. At that time, Brown was working third shift, from 11:00 p.m. to 9:30 a.m., at a group home that provided care to individuals with disabilities, located about a half-mile from her apartment.

{¶4}  On the evening of September 4, 2016, Evans was at Brown's apartment. They began arguing over a Facebook posting of Brown with another man. Brown testified that Evans had accused her of cheating on him, had screamed at her, had choked her, and had slammed her to the floor, but that he had not punched her. After the argument, Brown went to work. Evans came to the group home shortly thereafter, and they argued outside. Evans pushed Brown and then left. Evans remained angry. He repeatedly called Brown and sent her messages through Facebook, but Brown did

not respond. At trial, the state introduced into evidence the Facebook messages, as well as evidence of phone calls between Brown and Evans during that evening and the following morning.

{¶5} Around 6:30 a.m. on September 5, 2016, Evans showed up at the group home where Brown worked. He began banging on the front door and yelling at her. Concerned for her safety, Brown called 911. While Brown was on the phone with the 911 dispatcher, Evans kicked in the sidelight window next to the front door. He reached through the broken window, unlocked the door, and entered the group home. Evans yelled at Brown, and Brown screamed at Evans to stop. She asked the dispatcher to tell the police to hurry. Evans came to the kitchen where Brown was located. He grabbed the phone from her hand, hung up the phone, and then punched her in the face four times. Brown fell to the ground.

{¶6} Brown testified that the 911 dispatcher had called her back. On the second 911 call, which was played at trial, Brown told the dispatcher that Evans had kicked out the sidelight to the front door and punched her in the face. Prior to leaving, Evans threatened to kill her if she gave anyone his name. He then left the premises. Brown told the dispatcher that she did not know where Evans had gone. The dispatcher told Brown that an officer would be responding shortly to the group home.

{¶7} Brown testified that after she had been interviewed by police, she drove herself to the emergency room, where she was treated for a nasal bone fracture. Photographs of Brown's injuries and her emergency room records were admitted into evidence at the trial. The emergency room records established that Brown had suffered a nasal bone fracture of indeterminate age.

{¶8} Brown further testified that following Evans's arrest, Evans and his ex-girlfriend had called her from jail and asked her not to testify against Evans. The state

3

played recordings of jail phone calls between Evans and Brown, which corroborated Brown's testimony.

### Responding Officer

{¶9}    The responding police officer testified that the sidelight to the front door had been shattered.  He interviewed Brown.  She told him that she and her ex-boyfriend had "gotten into it and he [had] busted through the front door and punched her in the face."  He testified that Brown's lip and nose were swollen and her face was scratched. He stated that the injuries appeared to be "fresh" and that she had refused medical treatment.

### Charmaine Smith

{¶10}  Brown's supervisor, Charmaine Smith, testified that the group home was a locked facility.  When Smith arrived at the group home on September 5, 2016, the sidelight to the front door had been shattered.  She had observed injuries to Brown's face that appeared to be "fresh."  She further stated that she had seen Brown the day before, and that Brown had no injuries at that time.

### Santana Benton

{¶11}  Evans's ex-girlfriend, Santana Benton, testified on Evans's behalf. Benton testified that on the morning of September 5, 2016, Evans had called her and asked her to give him a ride to Brown's workplace so he could get the keys to his car. When they got to the group home, Benton stayed in the car while Evans went to the door.  She could hear Evans yelling for ten to 15 minutes.  She stated that she had seen him break a window next to the front door with his foot, but that he had never entered the group home.  Instead, according to Benton, he stayed at the front door, yelling profanities for about five minutes before coming back to the car.

4

{¶12} During cross-examination, Benton admitted that she was pregnant with Evans's child. She further admitted that during a jail-house phone call with Evans, Evans had told her that he had hit Brown in the nose, and that she had called and texted Brown on Evans's behalf so that Evans could try to dissuade Brown from testifying before the grand jury.

### *Greg Evans*

{¶13} Evans testified that on September 5, 2016, he and Brown were in a volatile relationship. They would fight frequently, but ultimately make up. He recently had given Brown $450 for a down payment on a car, with the agreement that he could use the car to drive to and from work. Evans testified that on the evening of September 4, 2016, he and Brown had been arguing about a Facebook post of her with another man and about his relationship with Benton.

{¶14} Brown drove the car to work that night to prevent him from visiting Benton, but she agreed that Evans could come to her work the following morning to pick up the car so he could drive himself to work. Evans went to the group home two times on the evening of September 4, 2016, to confront Brown about the Facebook post. They argued. On the second occasion, Brown grabbed him by the shirt and hit him. He then punched her in the face, causing her to fall to the ground. Evans then left and went back to Brown's apartment.

{¶15} Like Benton, Evans testified that Benton had then driven him to the group home around 6:20 a.m. to collect the keys to the car. Once there, Benton beeped the car's horn. He and Benton waited for Brown to come outside. When she did not, Evans walked to the front door. He saw Brown through the window. He asked her for the car keys so he could take the car to work, but she would not give them to him.

{¶16} He then saw Brown make a phone call. He heard Brown tell the person on the phone that her boyfriend was there and would not leave. He started banging on the door. He then became so frustrated that he kicked the sidelight window next to the front door, and it shattered. Brown screamed and dropped the phone on a cabinet. Evans denied entering the group home. He testified that he had stood outside the door and had told Brown that she was blowing things out of proportion. He then left, and Benton drove him to work.

{¶17} During cross-examination, Evans admitted that he and Brown had been physical with one another, but he testified that the first time that he had actually hit her with his fist had been the night before. He testified that he would typically restrain Brown, who would often try to hit him with "anything she could put her hands on." He also admitted that after his arrest, he had contacted Brown through Benton to try to work things out with her. Evans further admitted that he had been convicted of assaulting Benton.

### *Trial Court's Verdict*

{¶18} At the conclusion of the bench trial, the trial court judge found Evans guilty of aggravated burglary and acquitted him of felonious assault based on the following reasoning:

> The two tapes that the State of Ohio presented in this particular case are very graphic. I have the victim talking to the 911 operator. Begging for assistance. I hear the screaming of the defendant in the background. And I hear the crash and I hear the yelling of the victim yelling stop and the blood curdling scream and things happen after that when the phone goes dead.

6

And the second tape in regard to this particular matter was the other third individual, Santana, and the defendant where they are discussing this particular case.

And I agree, Santana, is in the middle of it. She is pregnant with the defendant's child. She was asked about the victim in this case. They see each other as rivals. And the statement was made by the defendant that he struck her and she went down. He struck her in the face, in the nose. Which Santana makes a remark about Miss Piggy's nose or the pig's nose and laughs.

From the very beginning, or not the beginning, after I heard the original charge, I ordered the defense to look at the possibility of reaching some type of plea bargain with the State of Ohio, the answer was no. So I was very interested in hearing what the defense was.

How do you take these tapes and explain them? In this particular case, although with some encouragement, the defense decided not to play the tapes and give an explanation. I gather that's trial strategy and I'll accept that. I was just very curious.

However, the one theory the defense puts up in front of me, he didn't hit the victim on this particular day because he had hit her before, seven hours earlier. And that seven hours earlier was not connected with this event when he struck her and she fell to the ground, that was a totally different incident in this particular case.

\* \* \*

And then I'll take the officer's word that when he got there, that he indeed saw fresh marks on or about her face.

7

There just isn't any room to move here. So in regards to Count 1 of the indictment, there will be a finding of guilty. And in regards to Count 2, I think I can do everything I want to do in count 1 of the indictment. I don't necessarily need Count 2, for that reason, not guilty to Count 2.

### Other-Acts Evidence

{¶19} In his first assignment of error, Evans argues the trial court erred as a matter of law by allowing Brown to testify to prior incidents during which Evans had physically harmed her and by allowing the state to impeach Evans's credibility with his prior misdemeanor conviction for assault.

{¶20} Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence, may, however, be admissible for other purposes, including "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 68; *see* R.C. 2945.59.

{¶21} Generally, other-acts evidence is admissible if (1) it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), (2) it is relevant when offered for that purpose, and (3) the danger of unfair prejudice does not substantially outweigh the probative value, Evid.R. 403. *Kirkland* at ¶ 68, citing *State v. Williams*, 143 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶22} Evans points to the exchange between the assistant prosecuting attorney and Brown, during direct examination, where the prosecutor asked about a fight Brown had had with Evans the night before. The assistant prosecuting attorney asked Brown,

"Did this argument get physical or was there a lot of screaming?" Brown responded, "Yes, it was a lot of screaming and he choked me. Like, he would slam me to the ground and stuff like that, but he never punched me."

{¶23} Evans argues that Brown's testimony was improper other-acts evidence, which denied him a fair trial. Evans, however, did not object to the testimony, and thus, he has forfeited all but plain error. For this court to reverse on plain error, we must find that (1) there was an error, (2) the error was plain, i.e., an obvious defect in the trial court proceedings, and (3) the error affected substantial rights, i.e., it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶24} Brown's testimony about her physical fight with Evans the night before was relevant evidence because it demonstrated Evans's motive and intent when he kicked in the door of the group home the following morning. *See State v. Hamm,* 1st Dist. Hamilton Nos. C-160230 and C-160231, 2017-Ohio-5595, ¶ 17-18; *State v. Murry,* 1st Dist. Hamilton No. C-130289, 2014-Ohio-1812, ¶ 8-11; *State v. Marshall,* 4th Dist. Lawrence No. o6CA23, 2007-Ohio-06298, ¶ 51-54; *State v. Blonski*, 125 Ohio App.3d 103, 113, 707 N.E.2d 1168 (9th Dist.1997). Thus, the admission of her testimony was not plain error when it was not error under Evid.R. 404(B).

{¶25} Evans also argues that the assistant prosecuting attorney improperly elicited other-acts evidence to impeach his credibility when he asked Evans on cross-examination about his prior misdemeanor-assault conviction:

> PROSECUTING ATTORNEY: Is it your testimony that you never assaulted Santana Benton?
>
> EVANS: No, I never assaulted her. I grabbed her. But I've never assaulted her, no, sir.

PROSECUTING ATTORNEY: Do you remember coming down and pleading guilty to an assault?

EVANS: I never pled guilty. We took it to trial. I told the Judge, I forgot which Judge it was, and she said in the statement I told her I grabbed her. And she said, well, that constituted assault. They didn't give me any time. They pretty much gave me the time served on the charge.

PROSECUTING ATTORNEY: My question was, when you went in front of Judge Grant, you were found guilty of assault?

EVANS: You said pled guilty. Yes, I was found guilty on that.

PROSECUTING ATTORNEY: Sorry. You were found guilty of assault against Santana Benton, right?

EVANS: Yes, sir.

{¶26} Evans argues that the colloquy regarding his prior conviction violated Evid.R. 404(B) because it painted him as a violent person with a history of assaultive behavior and because it was an improper means of impeachment under Evid.R. 609. "Evid.R. 609 prohibits the use of a prior misdemeanor conviction to attack a witness' credibility unless the crime involved dishonesty or a false statement." *State v. Lewis*, 10th Dist. Franklin No. 93AP-911, 1994 WL 171181, *8 (Apr. 28, 1994); *see State v. Stokes*, 2d Dist. Montgomery No. 2016-CA-4, 2016-Ohio-7520, ¶ 31.

{¶27} The state concedes and we agree that the trial court's admission of this testimony was improper. It does not fit within an Evid.R. 609 exception for prior convictions, and it was not offered for a valid purpose under Evid.R. 404(B). *See State v. Ellis*, 8 Ohio App.3d 27, 28, 455 N.E.2d 1025 (10th Dist.1982).

{¶28} However, we cannot conclude the admission of this evidence rises to the level of plain error. Evans's case was tried to the court. In a bench trial, the judge is presumed to consider only materially admissible evidence. *State v. Fox*, 69 Ohio St.3d 183, 189, 631 N.E.2d 124 (1994). Here, the trial court supplied its reasoning for finding Evans guilty on the record, which did not include its consideration of this evidence. Thus, the admission of this other-acts evidence did not affect the outcome of the trial. *See State v. Williams*, 38 Ohio St.3d 346, 351, 528 N.E.2d 910 (1988) (holding harmless error in admitting defendant's prior conviction, in light of remaining properly introduced evidence of defendant's guilt). As a result, we overrule the first assignment of error.

### Admission of Testimony under Evid.R. 701

{¶29} In his second assignment of error, Evans argues the trial court erred by permitting the responding police officer and Brown's supervisor to render an expert and/or lay opinion that Brown's facial injuries had appeared "fresh," without laying the proper foundation, and that the admission of the evidence prejudiced his right to a fair trial. Evans failed to object to the testimony about the age of Brown's injuries and thus forfeited all but plain error in its admission.

{¶30} Evid.R. 701 governs opinion testimony by lay witnesses. Under Evid.R. 701, the testimony of a witness is admissible as to "opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." *State v. McKee*, 91 Ohio St.3d 292, 296, 744 N.E.2d 737 (2001), quoting Evid.R. 701.

{¶31} Ohio courts have held that testimony as to whether a mark or bruise on a person's body is fresh does not require scientific, technical or specialized knowledge. *See State v. Thacker,* 4th Dist. Lawrence No. 04CA18, 2005-Ohio-1227, ¶ 15-18

(permitting police officer's lay testimony on the age of victim's injuries); *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 71-76 (permitting police officer's testimony regarding his observations of defendant's hand lacerations following his arrest); *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 77 (holding that police officer's testimony that bruising on victim's arms showed defensive marks was admissible under Evid.R. 701).

{¶32} Here, the responding officer testified to his personal observation of Brown's injuries. He stated that Brown had had a scratch on her face, and that her lip and nose had been a little swollen. When asked if the injuries were days or hours old or if they were fresh injuries, the officer testified that they appeared to be fresh injuries.

{¶33} Brown's supervisor testified that when she had responded to the group home, she saw a scratch on Brown's face. When asked by the assistant prosecuting attorney if she had seen the scratch the day before, she replied, "No." She further testified that the scratch appeared to be fresh, because there was blood around it. She was then shown a photograph of Brown, which she testified accurately depicted the scratch as she remembered it.

{¶34} Because both witnesses based their testimony on their personal observation of Brown and their common understanding of scratches and cuts, we cannot conclude that the trial court committed error, let alone plain error, in permitting their testimony. As a result, we overrule Evans's second assignment of error.

### *Prosecutorial Misconduct*

{¶35} In his third assignment of error, Evans argues that the assistant prosecuting attorney committed misconduct by introducing Brown's testimony regarding prior instances of physical harm that Evans had committed against her, and by impeaching his credibility with his prior misdemeanor-assault conviction. "The test

12

for prosecutorial misconduct is whether the prosecutor's questions or remarks were improper, and if so, whether they prejudicially affected the defendant's substantial rights." *State v. Valines*, 1st Dist. Hamilton No. C-130105, 2014-Ohio-890, ¶ 19.

{¶36} As set forth in our response to the first assignment of error, Brown's testimony was properly admitted as other-acts evidence under Evid.R. 404(B). Thus, the introduction of Brown's testimony did not constitute prejudicial error, as alleged by Evans. *State v. Clinton*, Slip Opinion No. 2017-Ohio-9423, ¶ 231; *State v. Haynes*, 1st Dist. Hamilton No. C-910365, 1993 WL 19454, *3 (Jan. 29, 1993).

{¶37} Although the assistant prosecuting attorney violated Evid.R. 404(B) and Evid.R. 609 when he elicited Evans's admission on cross-examination that he had a prior conviction for misdemeanor assault, as we determined in Evans's first assignment of error, admission of this evidence did not affect the outcome of the trial given the other evidence of Evans's guilt. Thus, Evans cannot show that the improper questioning prejudicially affected his substantial rights. *Valines* at ¶ 17 and 22. We therefore, overrule the third assignment of error.

### Evans's Fifth Amendment Right Against Self-Incrimination

{¶38} In his fourth assignment of error, Evans argues the trial court erred as a matter of law by improperly participating in the trial process and by placing the burden of proof on him to prove his innocence, thereby prejudicing his right to a fair and impartial trial. Evans contends that the trial court violated his Fifth Amendment right not to incriminate himself by telling him that if he wanted his side to be heard, he needed to testify and explain the facts against him. He further contends that the trial court violated his right to a fair trial with its statement, while rendering its verdict, that it had encouraged the defense at the beginning of the case to enter a plea bargain based upon the facts of the case.

**{¶39}** The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." This right is applicable to the state through the Due Process Clause of the Fourteenth Amendment. *State v. Leach,* 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 11, citing *Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Generally, the privilege must be affirmatively asserted to be effective. *See State v. Graham,* 136 Ohio St.3d 125, 2013-Ohio-2114, 991 N.E.2d 1116, ¶ 19; *Minnesota v. Murphy,* 465 U.S. 420, 427, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (noting that "[t]he [Fifth] Amendment speaks of compulsion," and that a defendant who "desires the protection of the privilege * * * must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment."). The privilege is "accorded liberal construction in favor of the right it was intended to secure." That right is "the right of an individual to force the state to produce the evidence against him or her by its own labor, not by forcing the individual to produce it from his or her own lips." *State v. Arnold,* 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 31.

**{¶40}** A defendant in a criminal case has no burden of proof. She or he may not be compelled to give testimony; rather she or he has an absolute right to decline to testify. *Id.* While a defendant can waive his Fifth Amendment right against self-incrimination, "for [the] waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' " *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed.2d 1461, (1938), quoted in *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), fn. 5.

{¶41} At Evans's trial, after the state had rested its case and the trial court had denied Evans's Crim.R. 29 motion as to the felonious-assault charge, defense counsel called Evans to the stand. The trial court requested a side bar discussion with counsel that was not recorded. Thereafter, the following exchange took place:

THE COURT: Okay, Counsel, we're back on the record at this particular point in time, and you were going to call your client? Mr. Evans, are we ready? Come up.

EVANS: I don't want to testify.

DEFENSE COUNSEL: He doesn't want to testify, Judge.

THE COURT: Mr. Evans, you just wanted to testify a few moments ago; is that correct? You don't want to testify now?

EVANS: I did, Your Honor. It seems like -- I don't know.

THE COURT: I'm not asking you to make a statement whether you did or not. So, Mr. Evans, if you want your side to be heard, you better come up and take the stand. Because right now, we just have the State's case. Can you do anything with these particular facts to explain them. No? Well, then you can't talk from there. Here's the chair up here. Come on.

{¶42} Evans was then sworn, and he testified.

{¶43} Evans argues that the trial court's statements denied him the right to a fair and impartial trial by improperly shifting the burden of proof to him and compelling him to testify in violation of his Fifth Amendment privilege against self-incrimination. The state argues, on the other hand, that Evans voluntarily took the stand and testified based solely on his concerns about the strength of the evidence the state had adduced against him. Assuming, without deciding, that the trial court's

statements left Evans no real choice but to testify, thus compelling him to be a witness against himself, the error was harmless.

**{¶44}** The Ohio Supreme Court has held that an appellate court reviews alleged violations of a defendant's right against self-incrimination under the harmless-error standard articulated in Crim.R. 52(A). *See State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 35-37; *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 31; *State v. Trusty*, 1st Dist. Hamilton Nos. C-120378 and C-120386, 2013-Ohio-3548, ¶ 25 ("A violation of a defendant's right against self-incrimination is subject to harmless-error analysis.").

**{¶45}** Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In *State v. Harris*, the Ohio Supreme Court stated that appellate courts must use a three-part analysis in determining whether the alleged error affected the defendant's substantial rights and thus required reversal:

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

(Internal citations omitted.) *Harris* at ¶ 37.

**{¶46}** Here, a review of Evans's testimony shows that he did, in fact, provide incriminating evidence against himself as to the aggravated burglary. For example, Evans admitted going to Brown's place of business and banging on the door. He also admitted kicking in the sidelight. And while he stopped short of testifying that he

had entered the group home, his testimony corroborated parts of Brown's testimony. But even if Evans's testimony was prejudicial, meaning that it had an impact on the trial court's finding of guilt, when Evans's testimony is excised, the remaining evidence established his guilt beyond a reasonable doubt. Thus, any alleged violation of Evans's Fifth Amendment privilege against self-incrimination was harmless error.

{¶47} Evans also claims that the trial court's comment that it had encouraged the defense to look into the possibility of a plea bargain with the state denied him a fair trial. But the trial court's comment was made after the presentation of all the evidence, as the court was rendering its verdict. *See State v. Pandolfi*, 11th Dist. Lake No. 2001-L-061, 2002-Ohio-7265, ¶ 49. Because this was a bench trial, the trial court was required to determine the credibility of the witnesses and to weigh their testimony. *State v. Parker*, 6th Dist. Sandusky No. S-01-028, 2002-Ohio-2688, ¶ 24, citing *State v. Walker*, 26 Ohio App.3d 29, 32, 498 N.E.2d 191 (8th Dist.1985). The trial court's comments, when viewed in the context of its entire remarks, do not reflect that the court had prejudged the case as Evans claims, but rather that the court had thoroughly reviewed the evidence presented at trial before rendering its verdict. We, therefore, overrule the fourth assignment of error.

### Ineffective Assistance of Counsel

{¶48} In his fifth assignment of error, Evans argues that he was denied the effective assistance of trial counsel. He argues that during the trial, defense counsel violated a duty to him and prejudiced him by failing to object to the other-acts evidence, asking Brown on cross-examination if Evans had punched her in the face before September 5, 2016, failing to object to the testimony by Brown's supervisor and the responding police officer about the age of Brown's facial injuries, and by failing to protect his Fifth Amendment right not to incriminate himself.

17

**{¶49}** To prove an allegation of ineffective assistance of counsel, Evans "must show that his counsel's representation fell below an objective standard of reasonableness" and that he was prejudiced by his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is demonstrated by showing that there is a reasonable probability that, but for the errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Id.* at 694. Both prongs must be met to demonstrate ineffective assistance of counsel. *Id.* at 697; *see State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988). Debatable tactical decisions by trial counsel may not form the basis of a claim for ineffective assistance of counsel. *See State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

**{¶50}** Here defense counsel's questioning of Brown about being punched prior to September 5, 2016, was part of Evans's trial strategy. *See State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 100-102. As discussed in the first and second assignments of error, testimony from Brown about her physical altercation with Evans the night before and two state's witnesses regarding the age of Brown's injuries was not improper. Thus, counsel cannot be said to have been ineffective in failing to object. *See Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, at ¶ 74-77. And while defense counsel arguably should have objected when the assistant prosecuting attorney questioned Evans about his prior misdemeanor-assault conviction, there is no reasonable probability that, but for this error, the results of the proceeding would have been different.

{¶51} Finally, as discussed in our analysis of the fourth assignment of error, any alleged violation by the trial court of Evans's Fifth Amendment privilege against self-incrimination is harmless-error on the state of this record. Thus, Evans cannot show that counsel's failure to object was deficient, or that the result of the trial would have been different. We, therefore, overrule Evans's fifth assignment of error.

### Sufficiency and Weight of the Evidence

{¶52} In his sixth assignment of error, Evans argues that the state introduced insufficient evidence to convict him of aggravated burglary, and that his aggravated-burglary conviction is not supported by the manifest weight of the evidence.

{¶53} When a defendant claims that a conviction is supported by insufficient evidence, this court must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found all the elements of the crime proved beyond a reasonable doubt. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing a defendant's claim that a conviction is against the manifest weight of the evidence, this court must weigh the evidence and the credibility of the witnesses to determine if the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Id.* at 387.

{¶54} Evans was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides that "[n]o person, by force, stealth, or deception shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense if * * * the offender inflicts, or attempts, or threatens to inflict physical harm on another."

{¶55} Here, the state presented Brown's testimony that Evans had come to Brown's workplace, kicked in the sidelight to the front door, reached his hand inside to unlock and open the door, entered the group home, and then punched Brown in the face multiple times. Brown's supervisor and the responding police officer testified that Brown had sustained injuries to her face, and that those injuries appeared to be "fresh." The state introduced Brown's medical records, which showed that she had been treated for a nasal fracture. The state additionally produced Brown's 911 calls, as well as the jail-house phone calls between Evans and his ex-girlfriend, where Evans had stated that he had punched Brown in the face and knocked her to the ground. This evidence, if believed, was sufficient to support his conviction for aggravated burglary.

{¶56} While Evans and Benton testified at trial to a different version of events than did Brown, we cannot conclude that the trial court, as the trier of fact, clearly lost its way and created a manifest miscarriage of justice in convicting Evans of aggravated burglary. Evans admitted that he had punched Brown in the face the night before during an argument. On the morning of the incident, he testified that he had kicked in the door to Brown's workplace, but he denied entering the building or punching Brown. Benton, likewise, testified that she had driven Evans to Brown's workplace and sat in a parked car waiting for him to retrieve his car keys from Brown. Benton testified that she had seen Evans kick in the sidelight next to the front door, but had not seen him enter Brown's workplace.

{¶57} The trial court, as the trier of fact, was in the best position to judge the credibility of the witnesses. *See State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Here, the trial court, in rendering its verdict, stated that it found Brown's testimony to be more credible because her version of events was corroborated by the contemporaneous 911 calls and the defendant's

admission in jail phone calls with Benton that he had punched the victim and knocked her to the ground. The trial court also credited the police officer's testimony that the injuries to Brown's face appeared to be "fresh."

{¶58} Evans also asserts that the trial court's decision to acquit him of felonious assault shows that the court must have had reasonable doubt as to his guilt with respect to the aggravated burglary.  The trial court's comments reflect, however, that its decision to acquit Evans of the felonious-assault charge was not the result of any evidentiary findings, but rather a decision based on lenity.  *See State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), paragraph one of the syllabus; *State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 11-24 (1st Dist.); *State v. Henderson*, 1st Dist. Hamilton No. C-130514, 2014-Ohio-3829, ¶ 23-25.  We, therefore, overrule Evans's sixth assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **MILLER, J.,** concur.

Please note:
> The court has recorded its own entry this date.